**Marcella Stanard, Plaintiff-Appellee, v. Rhymon Stanard, Defendant-Appellant.**

**Gen. No. 68–102.**

Third District.

April 25, 1969.

Roger V. Pierson, of Princeton, for appellant.

Rainey and Murphy, of Princeton, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The plaintiff, Marcella Stanard, brought this suit for divorce against the defendant, Rhymon Stanard, on grounds of desertion and mental cruelty. The matter was heard by the trial court, which denied the divorce on grounds of desertion, but granted it on the charge of mental cruelty. The defendant appealed from the decree for divorce.

He contends that the complaint was not sufficient to state a cause of action on the grounds of mental cruelty, and that the decree granting the divorce on such grounds was contrary to the manifest weight of the evidence.

An answer was filed by the defendant, which denied the material allegations of Count I of the complaint which charged desertion; and he filed a motion to dismiss Count II of the complaint which alleged mental cruelty. Subsequently, he filed an amended motion to dismiss this count. These motions set forth as grounds for dismissal: (1) that this count was insufficient at law; (2) that it did not state a cause of action; (3) that the allegations contained therein were vague and uncertain with respect to dates and did not constitute grounds for divorce; and (4) that the matters raised therein were res adjudicata. The motions were denied and the defendant did not file an answer to Count II of the amended complaint.

In this court, the defendant charges that the complaint was defective in that it did not allege the effect of the acts of which the plaintiff complained, and that the acts of the defendant were without provocation.

Under the provisions of section 45 of the Civil Practice Act (Ill Rev Stats 1967, c 110, par 45(2)), the defendant's motion to dismiss Count II of the complaint should have specified the manner in which the complaint was insufficient. Markovits v. Markovits, 2 Ill2d 303, 308, 309, 118 NE2d 255 (1954); Danville Producers Dairy v. Preferred Risk Mut. Ins. Co., 33 Ill App2d 359, 361, 362, 179 NE2d 439 (1961).

The defendant did not allege in his motion that the complaint was defective in failing to allege either the effect of the acts of the defendant or the absence of provocation. These issues were not presented to the trial court by motion because of the defendant's failure to specifically point out the defects complained of.

■■ Count II of the complaint sets forth seventeen specific incidents purporting to represent extreme and repeated mental cruelty towards the plaintiff by the defendant. The complaint neither specifically sets forth the absence of provocation, nor the cumulative effect upon the plaintiff of these various alleged acts. Absent a

total failure to state a cause of action, the defects, of which the defendant complained with reference to the plaintiff's complaint for divorce on the grounds of mental cruelty, were waived by him because he did not properly object to the sufficiency of these allegations in his motions. Bremer v. Bremer, 4 Ill2d 190, 192, 122 NE2d 794 (1954); Wilson v. Wilson, 56 Ill App2d 187, 192, 193, 205 NE2d 636 (1965); Grizzard v. Matthew Chevrolet, 39 Ill App2d 9, 17, 188 NE2d 59 (1963).

This is not the first divorce action between the parties. The plaintiff sought, but was denied, a divorce from the defendant in February, 1965. The parties have not lived together since that date.

The plaintiff was the only witness on the issue of mental cruelty. She testified on both direct and cross-examination. The defendant did not present any evidence. On direct examination, the plaintiff testified to the following incidents:

> On Memorial Day, 1966, one of the children had measles and she told the defendant he could not have the children on that occasion; that he became angry, swore at her and talked to her in a "very, very, dirty manner";
>
> On an occasion at the Elks Club when she was having dinner with two ladies, the defendant came over and asked in a loud tone if she was not out kind of late; started talking about the children, and then started using vile language, cussing and swearing;
>
> The defendant would drink to excess, and when he came home he would talk loud, cause fights and swear, and on these occasions he would also bring home a steak for himself, prepare it, and then go to bed;
>
> In 1964 and 1965, the defendant played poker, went to the golf course and to the races—enjoyed

all recreational activities alone; that shortly after this, the mortgage on the house was foreclosed;

When the plaintiff's mother died, the defendant used the occasion as an excuse to borrow money purportedly to pay for certain travel and funeral expenses, but, apparently, the money was not so used;

When one of their daughters was graduating from high school, the defendant took the money which she was saving for a prom dress; however, he gave the money back to the daughter;

The defendant would not invite company to the house;

He refused to give the plaintiff her military records (she had been a WAC), and threatened to burn them;

On an occasion when the defendant and one of their daughters were in the hospital, he hollered and raved at the plaintiff because she took an electric fan from his room to that of their daughter; and

During the last year, the defendant would tell the plaintiff of his other women.

On cross-examination, the plaintiff testified that after they had separated, from time to time, she denied the defendant the right to visit his own children; that the altercation at the Elks Club related to the fact that the defendant had been denied the right to visit his children; that during the eighteen years that they had been married, he had not missed any time from work because of drinking; that when the defendant prepared his own steak, she had refused to fix it for him, and, at that time, the freezer in the basement was full of meat; that when he took money from his daughter's dresser drawer, which she had been saving for a prom dress, there were at least one hundred fifty silver dollars in the drawer that were not taken, and the plaintiff had control over this money.

She further testified on cross-examination, that the mortgage foreclosure proceedings were not started until after the defendant had been sick and had been hospitalized for some time—apparently, severely ill; that the reason that he threatened to burn her military papers was that she was holding some checks which had been mailed to him from the race track for the purchase price of a horse; that when both the defendant and their daughter were in the hospital, they visited back and forth and had breakfast together; and that the daughter was visibly upset when he was taken from the local hospital to Hines hospital.

The plaintiff's evidence appears noticeably lacking in its failure to show an absence of provocation. Prior to 1967, the Divorce Act permitted a divorce on the grounds of cruelty—only, in the event of physical cruelty. As amended in 1967, the Act added as a ground that a divorce may be obtained from one who has been "guilty of extreme and repeated physical or *mental* cruelty."

██ It has long been held that one may not provoke physical retaliation on the part of his or her spouse and complain of such retaliation unless it is out of all proportion to the provocation. Trenchard v. Trenchard, 245 Ill 313, 315, 92 NE 243 (1910) ; De La Hay v. De La Hay, 21 Ill 251, 254 (1859). See also: 24 Am Jur2d, Divorce and Separation, § 174. It should be apparent from the manner in which the statute was amended that the "physical" and "mental" cruelty are alternative grounds for divorce. Thus, the Divorce Act recognizes that varying types of conduct of the offending party may constitute different types of cruelty. This manner in which the statute was amended, as well as legal precedent and common sense, dictates that a party must show lack of provocation when a right to a divorce is based upon mental cruelty as well as when based upon physical cruelty: this is an essential element of the complaining party's case.

246

■ There is insufficient evidence in the record to establish a lack of provocation for the acts of which the plaintiff complains. Indeed, the evidence suggests at least some provocation for the acts alluded to. The plaintiff's failure to prove lack of provocation may be due to her interpretation of section 8(a) of the Divorce Act (Ill Rev Stats 1967, c 40, par 9(a)), which provides that in every action for divorce commenced after its effective date, "the fault or conduct of the plaintiff, unless raised by the pleadings, is not a bar to the action nor a proper basis for the refusal of a decree of divorce." The plaintiff's brief indicates that she interpreted this section to mean she did not have to show a lack of provocation.

■■ Generally, a recriminatory offense must be of the same statutory character as the ground for divorce (Levy v. Levy, 388 Ill 179, 186, 57 NE2d 366 (1944)); and a divorce on the ground of adultery is not barred by a defense of cruelty (Peck v. Peck, 16 Ill2d 268, 278, 279, 157 NE2d 249 (1959)); habitual drunkenness (Zimmerman v. Zimmerman, 242 Ill 552, 558, 90 NE 192 (1909)); desertion (Nesheim v. Nesheim, 293 Ill App 257, 260, 12 NE2d 222 (1938)); or other statutory grounds (Decker v. Decker, 193 Ill 285, 294, 61 NE 1108 (1901)). However, adultery is a good defense to any other statutory ground for divorce, including the charge of adultery. Decker v. Decker, supra; Kovac v. Kovac, 26 Ill App2d 29, 54, 167 NE2d 281 (1960). In Zimmerman, the plaintiff sought a divorce on the grounds of cruelty, and upon trial it appeared that she had been guilty of adultery. At page 558, the court held that where this fact was established, "whether set up by pleadings or not" the divorce will not be granted. See also: Nesheim v. Nesheim, supra, 259.

■ We believe that section 8(a) of the Divorce Act requires that recrimination must be raised in the pleadings if it is to be raised as a defense. Its purpose was to place the defense of adultery on the same footing as any

247

other recriminatory conduct. Consequently, adultery may not now be raised as a defense to the divorce action, unless pleaded by the party.

██ This particular section of the Act has no application to her action. First, her action was commenced before its effective date, and second, the section was not intended to alter what might, or might not, constitute physical or mental cruelty. Whether certain acts will constitute physical or mental cruelty still depends upon the total factual background surrounding the conduct under question. This includes the particular emotional and personal makeup of the parties, and the varying circumstances under which any of the incidents occurred that may have given rise to the acts. An act which may constitute either physical or mental cruelty, when committed without any provoking force, may not be a sufficient basis for divorce when committed in certain provoking situations. It was the plaintiff's burden to prove that the acts complained of—committed in a particular setting —were sufficient to justify a divorce.

██ We believe that Count II of the complaint, which charged mental cruelty, failed to state a cause of action. This defect may be raised on review. Trenchard v. Trenchard, supra, 315; Chatterton v. Chatterton, 132 Ill App 31, 37 (1907); Curlett v. Curlett, 106 Ill App 81, 85 (1903).

██ Under the facts set forth in the record, it appears that the plaintiff neither alleged nor proved lack of provocation, and even though the defendant failed to answer Count II, the decree concluded him only as to all matters of fact alleged in the complaint. The sufficiency of the complaint itself, and its averments, may be attacked as not justifying the decree. Dillman v. Dillman, 409 Ill 494, 499, 100 NE2d 567 (1951); Curlett v. Curlett, supra, 85. The decree is, therefore, subject to attack upon review with reference to lack of provocation.

248

The plaintiff's cause of action falls somewhat short in another regard: the effect, if any, of the defendant's acts upon her. She did testify that on the one occasion in the hospital, the conduct of the defendant caused her to cry. There are no allegations in the complaint and there is no other evidence in the record which suggests that the conduct of the defendant was such as to cause the plaintiff's life, person or health to be endangered. We do not conclude from the evidence that the unprovoked conduct of the defendant was sufficient to render her life miserable and unendurable, and to cause her intense embarrassment, humiliation and anguish. The trial court apparently took a contrary view in that it found that such conduct would render her life intolerable.

Apparently, the trial court was moved by the fact that this marriage was obviously dead; that the parties had not lived together for some time, and would not now do so; and that to permit the marriage to continue would "simply be continuing an existence of a status which is a constant source of friction." The observations of the trial court are patently correct.

However, as has been reiterated time and again, the law favors the preservation of the estate of marriage and will dissolve a marriage only upon sufficient proof of the grounds set forth under the statute. People ex rel. Doty v. Connell, 9 Ill2d 390, 394, 137 NE2d 849 (1956); Kinsley v. Kinsley, 388 Ill 194, 197, 57 NE2d 449 (1944).

We believe that the lack of allegations and proof with reference to the want of provocation of the defendant's acts by the plaintiff's conduct, and of the effect of his conduct on her life, person or health, resulted in a decree of the trial court which was unwarranted and contrary to the manifest weight of the evidence; and that the cause should be remanded to the trial court for a new

249

trial. Accordingly, the cause is reversed and remanded to the trial court for a new trial.

Reversed and remanded.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.