HOWARD C. GREGORY, Plaintiff-Counterdefendant-Appellee, *v.* FLORENCE
C. GREGORY, Defendant-Counterplaintiff-Appellant.

(No. 73-4;

Second District—December 12, 1974.

*Rehearing denied January 8, 1975.*

Korf, Pfeil & Graves, of Elkhorn, Wisconsin, and Rinella & Rinella, of Chicago, for appellant.

Pedderson, Menzimer, Conde, Stoner, Ferolie & Spelman, of Rockford (Clifford E. Stoner, Clifford A. Pedderson, and Dale F. Conde, of counsel), for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Defendant appeals from decrees, founded upon jury verdicts, which granted plaintiff a divorce on the grounds of extreme and repeated mental cruelty and denied defendant a divorce on the same grounds. Plaintiff cross-appeals, claiming that the trial court erred by making certain awards to the defendant. Pending appeal, plaintiff moved to dismiss defendant's appeal. The motion was ordered taken with the case. Numerous issues are raised by both parties, but it is necessary for use to consider only plaintiff's motion and the question of whether the decrees entered are supported by the evidence.

■■ Plaintiff's motion is in the nature of a plea of release of errors. It is argued that by accepting the $175 weekly alimony payments ordered in the divorce decree, defendant is estopped from appealing the decree. It is a rule of law that a party cannot attack a divorce decree after having enjoyed its benefits, when to do so would place the opposing party at a distinct disadvantage upon reversal of the decree. *Lemon v. Lemon*, 14 Ill.2d 15, 17-18 (1958); *James v. James*, 14 Ill.2d 295, 298 (1958); *Pope v. Pope*, 12 Ill.App.3d 800, 803-04 (1973); *Hancox v. Hancox*, 54 Ill.App.2d 476, 479-80 (1964).

Pursuant to the decree of divorce, alimony was paid to defendant for approximately 4 months after which time, on motion by the defendant, the trial court ordered that, pending disposition of the appeal, forthcoming alimony payments would be considered payment of temporary alimony. (See Ill. Rev. Stat. 1971, ch. 40, § 16.) Evidence reveals that the

defendant accepted these funds under protest; she did not use the funds but held them in a bank account. Under these facts we find that the defendant has not enjoyed the benefits of the decree and that plaintiff would not be placed at a distinct disadvantage by a reversal of the decree. The motion is denied.

A complete review of the testimony relied upon by the parties to establish extreme and repeated mental cruelty is necessary in order to determine whether the evidence justifies the judgments entered.

At the time of their separation, this marriage (the third for both parties) had endured for 25 years. Defendant had no children; plaintiff had four children born of his first marriage. At the time of trial, plaintiff was 85 years of age, defendant, 69.

After asserting that during their marriage he had been very considerate and generous toward defendant, plaintiff testified to the following incidents which occurred during or as the result of various arguments between the couple. Four to five years prior to trial, as plaintiff went to the closet for his coat, defendant seized him and, in the process, knocked off his glasses. During the same period, defendant seized plaintiff while he was sitting in his chair and, on another occasion within the last 2 or 3 years, defendant forced plaintiff backward on the bed and seized his arms. Plaintiff could not recall the cause of the arguments; the parties were alone when these acts occurred. Plaintiff testified that, while he had not been physically hurt, he reacted with a keen sense of disappointment in being subjected to such treatment and that the acts were a source of embarrassment and humiliation to him.

Two or three years prior to trial, plaintiff learned from a third party that defendant had purchased a farm. He characterized as embarrassing both the purchase and the manner in which he learned of it.

Early in 1970, the parties agreed to equally divide plaintiff's income. In November of that year, plaintiff asked for defendant's consent to invade the corpus of a trust for the purpose of their making a relatively small joint gift to certain charities; defendant refused. Plaintiff thereupon withdrew his consent to divide his income with the defendant and defendant responded by refusing to perform any domestic services for plaintiff. This continued until the middle of December, 1970, when the plaintiff left to visit one of his daughters and her family in North Carolina. On his return in early January, 1971, plaintiff became ill. Defendant rendered him services during his illness but after his recovery rendered no further services until plaintiff left on January 14, 1971, for an around-the-world cruise. Plaintiff returned in April, 1971, and established his own domicile.

In December of 1970, defendant exercised her power to have the plain-

tiff removed as comanager of one of their trusts. Notice of removal was sent to an officer of the trust (First National Bank of Rockford). Plaintiff was embarrassed and disappointed by this act because it reflected on his ability to handle financial matters. (Before his 1962 retirement, plaintiff had been treasurer of J. L. Clark Co.) In April, 1971, prior to filing his complaint for divorce, plaintiff, with one of his daughters, went to the marital domicile to gather his personal effects; defendant was very angry, refused to help him gather his belongings, and called him a "senile old goat."

It is upon this evidence that the defendant was found guilty of extreme and repeated mental cruelty.

Defendant's bill of particulars sets forth 22 acts of alleged mental cruelty covering a 23-year period. We relate only those incidents which seemingly are of more substance. In 1948, while dining out together and while plaintiff read a newspaper and drank his cocktail, defendant attempted to surprise him by slipping her newly-acquired commercial pilot's license under the newspaper. Plaintiff moved the paper to one side, looked at the license and returned to his reading. His action caused the defendant to cry.

Plaintiff and defendant sailed from Japan to San Francisco in April of 1961 and defendant became ill. During the trip she was cared for by the purser and the captain; plaintiff did not bring her food or ask how she was feeling. Although still ill upon arrival in San Francisco, defendant reluctantly followed plaintiff's suggestion that she go to Los Angeles and sit in the sun with her brother. Since plaintiff was traveling the distance home by train, he left defendant at the train station, thereby causing her a great deal of difficulty in reaching the San Francisco Airport. Defendant flew to Rockford from Los Angeles, arrived home before plaintiff, and called her doctor, who saw her four times that night. She did not recover from her illness for approximately 1 year.

In 1966, plaintiff visited his son in Connecticut and planned to depart from there on a North Cape cruise. In a telephone conversation the night before his departure, defendant informed him that she had been taken ill; plaintiff told her to go to bed, departed as scheduled, and did not write or phone during the voyage.

The following year, preparatory to flying the two of them to St. Paul, Minnesota, defendant began a flight check on her plane. Plaintiff talked to defendant and was asked to please keep quiet until she finished the check; plaintiff became angry and threw a thermos of coffee in the direction of the defendant. The bottle broke when it hit the instrument panel. Defendant cleaned up the mess, and they proceeded on their trip.

During a 1968 cruise, defendant again became ill and was able to

disembark at only 5 of the 17 ports of call. When they reached Florida, the defendant wanted to go home; plaintiff wanted to rent an apartment in Florida. An argument ensued and plaintiff took the defendant to the airport. She returned home alone to seek medical attention.

Plaintiff did not take defendant along on his 1970 cruise and left her only $200 for expenses during his 2-month absence. To meet expenses, defendant wrote $1400 in overdraft checks which were honored by the bank. Upon plaintiff's return, the two consulted an attorney and, on his advice, agreed to divide plaintiff's income equally.

The defendant testified that plaintiff never brought her gifts from his travels, that he left her alone for three Christmases which he spent with his children, and that for Christmas 1967 to 1970, he gave her a total of three boxes of stationery while he gave his children stocks with an approximate total value of $50,000.

Plaintiff denied that he failed to render the defendant aid during her 1961 illness and testified that he could not recall throwing the thermos.

Upon this evidence, plaintiff was found not guilty of extreme and repeated mental cruelty.

■■ Our legislature has the sole power to determine what causes, if any, must be established in order for one of the State's residents to be entitled to a divorce. While other jurisdictions in recent years have recognized the countervailing consideration that much harm may result from a denial of a divorce where the marriage has ended in fact (24 Am.Jr.2d *Divorce and Separation* § 9), the public policy of our State is to preserve the marriage. (*Stanard v. Stanard*, 108 Ill.App.2d 240, 249 (1969).) The law in Illinois remains that a marriage should not be lightly terminated. A plaintiff is required to prove a statutory cause for divorce by competent evidence, even though the court might conclude the marriage to be dead. *McGowan v. McGowan*, 15 Ill.App.3d 913, 915 (1973).

■■ Extreme and repeated mental cruelty is a cause for divorce. (Ill. Rev. Stat. 1971, ch. 40, § 1.) Whether certain acts constitute mental cruelty depends upon the total factual background of each case, the emotional and personal make-up of the parties and the circumstances under which the incidents occurred. (*Woodshank v. Woodshank*, 2 Ill.App.3d 596, 599 (1971); *Loveless v. Loveless*, 128 Ill.App.2d 297, 300 (1970); *Howison v. Howison*, 128 Ill.App.2d 377, 381 (1970); *Akin v. Akin*, 125 Ill.App.2d 159, 165-66 (1970).) The ultimate test is the effect the complained-of-conduct had upon the complaining party and the marriage. (*Howison v. Howison, supra,* at 381.) Generally, the elements of extreme and repeated mental cruelty have been recognized as a course of abusive and humiliating treatment, calculated or obviously of the nature to

torture, discommode, or render miserable the life of the opposite spouse, which conduct actually affects the physical or mental health of the spouse. (*Howison v. Howison, supra,* at 382; *Marks v. Marks,* 8 Ill.App.3d 212, 214 (1972); *Quilty v. Quilty,* 5 Ill.App.3d 801, 803 (1972); *Stanard v. Stanard, supra,* at 249.) The complaining party also bears the burden of proving by a preponderance of the evidence that the conduct complained of was not provoked. *Stanard v. Stanard, supra,* at 246.

■■ The record reveals that, under the law, neither party met the quantum of proof necessary to support a decree of divorce based upon mental cruelty. Plaintiff testified that at sporadic times during the marriage defendant's conduct embarrassed and humiliated him, but he failed to establish that defendant's conduct was calculated or obviously of a nature to torture, discommode or render his life unendurable or miserable and actually affected his physical or mental health. Incidents of humiliation, by themselves, are not sufficient to cause mental cruelty. Defendant's evidence on her counterclaim fails for the same reason.

Another deficiency of proof is that neither party established the lack of provocation. Defendant's evidence wholly fails in this respect. Plaintiff, in an attempt to avoid this defect, mistakenly relies upon the general statement that he had been very considerate and generous to defendant, a statement made in answer to a question concerning his conduct generally toward the defendant during their marriage, and not for the purpose of proving lack of provocation. When specifically asked the cause of the arguments which led to defendant's conduct, plaintiff could not recollect the causes.

■■ A reviewing court is not free to set aside a jury verdict on the basis that it would have reached a different conclusion, but where there is a complete absence of fact to support the jury's conclusion, it becomes the duty of the reviewing court to set the verdict aside. (*Allendorf v. Elgin, J. & E. Ry. Co.,* 8 Ill.2d 164, 171 (1956); *Owen v. Pret' A Porter Boutique, Inc.,* 15 Ill.App.3d 438, 443 (1973).) In the present case, the jury's verdict in favor of the plaintiff was based upon insufficient facts and must be set aside. On the same basis, its verdict against the defendant is found to be correct.

For these reasons, the decree granting plaintiff a divorce is reversed and the order denying defendant a divorce is affirmed.

Motion to dismiss appeal denied; decree of divorce as to plaintiff, reversed; order denying divorce to defendant, affirmed.

GUILD and RECHENMACHER, JJ., concur.