664

RAY L. SHERMAN, Plaintiff-Appellee, *v.* HARRIET M. SHERMAN, Defendant-Appellant.
Second District (1st Division)   No. 74-194

Opinion filed June 1, 1976.

Harriet Sherman, of Chicago, for appellant, *pro se.*

Ray L. Sherman, of Chicago, for appellee, *pro se.*

Mr. JUSTICE HALLETT delivered the opinion of the court:

This is an appeal by the wife from a judgment awarding her husband a divorce upon a finding merely that the defendant wife's total preoccupation with her avocation so upset her husband as to cause certain disorders and led to the breakdown of their marriage. The defendant wife contends, *inter alia,* that there was no finding upon which a decree could properly be based. We agree and reverse and remand.

The plaintiff Ray L. Sherman and the defendant Harriet M. Sherman were married on June 24, 1950. They have no children. On February 7, 1972, Mr. Sherman filed for divorce contending that the defendant had been guilty of extreme and repeated mental cruelty rendering his life miserable. The particular actions were not specified in the complaint. The defendant denied the plaintiff's allegations and later counterclaimed charging that the plaintiff was guilty of adultery with Selma Spector.

On March 15, 1974, the court entered its decree finding that:

1. At all times the plaintiff-counterdefendant conducted himself as a true, faithful and affectionate husband.

2. For several years immediately preceding January, 1972, the defendant-counterplaintiff was totally preoccupied with her avocation which took the form of various investigations all over the protests of her husband that he did not wish to hear of the investigations and that she conduct them outside his presence.

3. This continued preoccupation so discommoded the plaintiff-counterdefendant as to lead him to actual disorders manifested by attacks of colitis and diarrhea and generally upset the plaintiff-counterdefendant. (It must be noted however that in an insurance application filled out on June 13, 1973 (and naming Selma Sherman as his spouse), Mr. Sherman stated he had not been under observation or had any medical or surgical advice or treatment or been hospital confined during the past five years.)

4. This conduct actually led to and caused the breakdown of the parties' marriage.

5. While Mr. Sherman had left his wife in January, 1973, this was due to her fault.

6. The evidence was insufficient to show that Mr. Sherman had committed adultery with Ms. Spector.

The court purportedly awarded alimony in gross to the defendant Mrs. Sherman consisting of the marital premises and the sum of $2,400 to be paid in 24 equal monthly installments. The court however made no determination as to what had been the defendant's rights in the marital home prior to the award. Moreover, the arrearages caused by Mr. Sherman's failure to pay the temporary alimony as ordered were merged in the award of alimony in gross although it would appear from the defendant's contentions that the arrearages exceeded $2,400.

In a later order the court determined that since the defendant had for some time represented herself pro se, she must be possessed of skills which if converted to gainful employment would reap some emolument and since there was no evidence she is not gainfully employable (she is apparently 54 years of age) and that since she had assets in the form of the alimony in gross and furthermore is a joint tenant of the real estate in question and since the record is replete with motions filed by the defendant requiring countless appearances of plaintiff's counsel thereby adding to his legal expenses (some at least of these motions were attempts to enforce the award of temporary alimony), to tax the plaintiff for transcripts for post-trial motions and notice of appeal would be unconscionable. The court also ruled that there was no authority for ordering the furnishing of free transcripts to an indigent party in a civil proceeding. The defendant is on public welfare. Accordingly, no transcript of the report of proceedings was filed with the appeal.

666

As stated by this court in *Gregory v. Gregory* (1974), 24 Ill. App. 3d 436, 440, 321 N.E.2d 122,

> "Our legislature has the sole power to determine what causes, if any, must be established in order for one of the State's residents to be entitled to a divorce. While other jurisdictions in recent years have recognized the countervailing consideration that much harm may result from a denial of a divorce where the marriage has ended in fact (24 Am.Jr.2d *Divorce and Separation* §9), the public policy of our State is to preserve the marriage. *(Stanard v. Stanard,* 108 Ill. App. 2d 240, 249 (1969).) The law in Illinois remains that a marriage should not be lightly terminated. A plaintiff is required to prove a statutory cause for divorce by competent evidence, even though the court might conclude the marriage to be dead."

The court nowhere in its decree found the defendant guilty of mental cruelty. It merely found that the defendant's conduct had led to the breakdown of the marriage. And that is not enough. *Gregory v. Gregory* (1974), 24 Ill. App. 3d 436, 321 N.E.2d 122.

■■ Even if this court were willing to infer a finding of mental cruelty from the court's determination that the defendant's total preoccupation with the investigations had injured her husband's health since the complaint had properly alleged that the defendant was guilty of mental cruelty, (and this court is not so willing), the court also failed to determine that the defendant's conduct "was calculated or obviously of a nature to torture, discommode or render his life unendurable or miserable \* \* \* ." *(Gregory v. Gregory* (1974), 24 Ill. App. 3d 436, 321 N.E.2d 122.) Generally, the elements of extreme and repeated mental cruelty such as the plaintiff alleged here, have been recognized as a course of abusive and humiliating treatment calculated or obviously of a nature to torture, discommode or render miserable the life of the opposite spouse, which conduct actually affects the physical or mental health of the spouse. *Gregory v. Gregory* (1974), 24 Ill. App. 3d 436, 321 N.E.2d 122; *Stanard v. Stanard* (1969), 108 Ill. App. 2d 240, 247 N.E.2d 438; *Howison v. Howison* (1970), 128 Ill. App. 2d 377, 262 N.E.2d 1; *Marks v. Marks* (1972), 8 Ill. App. 3d 212, 289 N.E.2d 671; *Quilty v. Quilty* (1972), 5 Ill. App. 3d 801; 284 N.E.2d 690.

Finally nowhere in its decree did the court find that the plaintiff was not guilty of provocation. As this court has repeatedly held, the lack of provocation is an essential element of the case of one seeking a divorce. *Stanard v. Stanard* (1969), 108 Ill. App. 2d 240, 247 N.E.2d 438; *Gregory v. Gregory* (1974), 24 Ill. App. 3d 436, 321 N.E.2d 122.

■■ To conclude, the trial court's decree in this case cannot stand because it was not based on a statutory ground for divorce in this State. *(Morrow v. Morrow* (1957), 15 Ill. App. 2d 109; 145 N.E.2d 381.) The

court merely found that the defendant's conduct led to the breakdown of the marriage. That is not enough. And even if the court had intended to enter a decree of divorce based upon a finding of mental cruelty as alleged in the complaint, it failed to find any of the essential elements required.

> "[I]t is not the function of the courts to determine that parties to an impossible marriage situation are entitled to a divorce merely on the grounds that they cannot live together. It is the function of the legislative branch of government of this State to determine whether or not divorces should be granted regardless of fault."
> *Sharpe v. Sharpe* (1973), 9 Ill. App. 3d 667, 670, 292 N.E.2d 566.

It would appear the ends of justice would best be served by remanding this case for a new trial. Under the circumstances, it is not necessary for this court to determine if the appellant was an indigent person and, if so, whether she was entitled to a transcript under the provisions of the act relating to costs (Ill. Rev. Stat. 1971, ch. 33, par. 5; see *Sims v. Sims* (1974), 21 Ill. App. 3d 61, 315 N.E.2d 161; and compare *King v. King* (1974), 21 Ill. App. 3d 1062, 316 N.E.2d 555). Nor is it necessary for this court to determine whether the defendant has a vested right in the temporary alimony which was past due.

For the foregoing reasons, we reverse the decree granting the plaintiff a divorce and awarding the defendant alimony in gross and remand the case to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

GUILD, P. J., and SEIDENFELD, J., concur.