HAZEL L. GRAHAM, Plaintiff-Appellee, *v.* KENNETH E. GRAHAM, Defendant-Appellant.

Fifth District    No. 75-504

Opinion filed November 19, 1976.

520

522

Harlan Heller, Ltd., of Mattoon (Harlan Heller and William E. Larrabee, of counsel), for appellant.

Dove & Dove, of Shelbyville (Edward C. Eberspacher III, of counsel), for appellee.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:
Plaintiff-appellee Hazel L. Graham filed a petition seeking separate maintenance from her husband, defendant-appellant Kenneth E. Graham, in the Circuit Court of Shelby County. The petition alleged, *inter alia,* that the defendant had "willfully abandoned, deserted and absented himself from the plaintiff and the marital home in Shelby County, Illinois, without any reasonable cause or fault on the part of the plaintiff * * *." The defendant's answer denied these allegations and affirmatively alleged that the plaintiff was barred from any relief "by reason of her misconduct and by virtue of her desertion of the defendant." The plaintiff denied that she deserted the defendant. The defendant's answer added a counterclaim for divorce grounded on acts of extreme and repeated mental cruelty, alleging as instances thereof the plaintiff's failure and refusal to accompany him when his work compelled him to move from Shelby County; frequent quarrels which caused him to suffer "extreme nervousness" and obliged him to seek the care of a

physician; and failure to carry on a normal marital relationship. The plaintiff's answer to the counterclaim denied each of these allegations.

The trial court entered a decree dismissing the counterclaim for divorce, finding that the plaintiff had sustained the allegations in her petition for separate maintenance, although finding that she was not in need of support at that time, and ordering the defendant to pay $55 per week for the support of the parties' minor child, all extraordinary medical expenses for the child, and $500 for plaintiff's attorney's fees, plus court costs. This appeal, from both the decree for separate maintenance and the dismissal of the counterclaim for divorce, followed.

The relevant facts, as established at trial by the testimony of the parties and their 16-year-old daughter Rosemary, were as follows:

Plaintiff and defendant were married on March 2, 1957, and had lived in Findlay, Illinois, since that time. Since 1960, defendant has worked for the C & EI Railroad. Early in 1973, the Findlay depot was terminated, necessitating that the defendant work in St. Elmo and Villa Grove, about 45 and 60 miles, respectively, from Findlay. He would return to the family home on his days off. Also early in 1973, the defendant closed the parties' joint checking account at the Shelby County State Bank because his wife had written a number of insufficient funds checks. Around March of 1973, defendant was "bumped" (displaced by a worker with more seniority) from the St. Elmo-Villa Grove job and transferred to a "swing job" in Salem, Mt. Vernon, and West Frankfort, some 90 to 100 miles from Findlay. He moved the family's mobile camper to a campground nearer to his job, and for the next two or three months returned to Findlay on his days off. The defendant testified that before accepting the job in Mt. Vernon, he asked his wife to move with him to Southern Illinois. According to him, she said that she wouldn't until school was out, and suggested that he take the camper and stay in it until school was out, when they would discuss it further.

About May 15, 1973, after defendant had not returned home for two or three weeks, his wife called to ask why he hadn't come home. He told her that he had obtained a wiring job on a house and had stayed to do that job. He also told her that he was planning to attend the children's graduation exercises, scheduled for successive days at the end of that month. He did come home for their son William's graduation, and then drove the 90 miles back to Mt. Vernon, as he had to work that night. He made the drive again the next day, arriving back in Findlay about noon, and fell asleep in a chair. He was awakened and "upset" by Rosemary's banging the door, and left without attending the graduation. The alleged desertion dates from this departure.

His wife testified that he had only stayed overnight with her about three times since that incident, although she did not believe that she had ever

asked him to leave the marital residence. The only discussion she could remember having with him about moving from Findlay occurred one night late in November 1973. At that time he was still working out of Salem, Mt. Vernon, and West Frankfort, and also working as a dispatcher for the Missouri Pacific Railroad in Chester, some 180 miles from Findlay. He asked her how much she thought it would cost to move their mobile home down to Southern Illinois, but, she testified, he never asked her specifically to move to another place, nor did she ever refuse to go with him. He didn't want Rosemary to live in Chester because of the supposed drug problem there. Rosemary did not remember hearing her parents discuss moving to Southern Illinois on any other occasion.

The defendant testified that he discussed her moving several times on the telephone and once "during strawberry season," when his wife came down to visit him with his oldest daughter by his first wife, and Rosemary. He recalled making the statement about the drug problem in Chester, but testified that he didn't mean by that that he didn't want them to move to Southern Illinois, only that he would not want them to live in Chester. He testified that after June of 1973, when he started working as a dispatcher in Chester, he came home to Findlay only once a month or every two months, sleeping and having sexual relations with his wife on those occasions when he spent the night. He testified that he telephoned half a dozen or a dozen times and asked her if they could get back together, but she didn't seem to think that it would work. He couldn't say exactly how many times they had talked about his wife moving to his place of employment. The last time was in early March of 1975, some two months before the hearing.

Defendant raises three issues on this appeal: whether plaintiff was entitled to a decree of separate maintenance, whether defendant was entitled to a decree of divorce, and whether the trial court erred in its award of support.

■■ Our separate maintenance statute gives married men or women living separate and apart from their wives or husbands "without their fault" a remedy for reasonable support and maintenance. (Ill. Stat. 1973, ch. 68, par. 22.) At common law, if a woman was compelled to live apart from her husband without her fault, she carried her husband's credit with her to the extent of supplying herself with necessities, but only those who furnished her with necessities could maintain an action against the husband. (*Van Dolman v. Van Dolman*, 378 Ill. 98, 37 N.E.2d 850 (1941); *Bartlow v. Bartlow*, 114 Ill. App. 604 (3d Dist. 1904).) The original purpose of the separate maintenance statute was to remedy this perceived defect in the common law by enabling a married woman to sue in equity in her own name for her support. (See *Ross v. Ross*, 69 Ill. 569 (1873); *Bush v. Bush*, 316 Ill. App. 295, 44 N.E.2d 767 (3d Dist. 1942), and cases

cited therein.) The present statute, of course, accords the same right to the husband.

■■ ■ In order to prevail in a separate maintenance action, it is essential that the plaintiff establish that the separation was without her fault. (*Neal v. Neal*, 43 Ill. App. 2d 108, 192 N.E.2d 689 (3d Dist. 1963); *David v. David*, 77 Ill. App. 2d 448, 222 N.E.2d 540 (2d Dist. 1966).) The "fault" referred to in the statute consists of either voluntary consent to a separation or failure of duty or misconduct materially contributing to a disruption of the marital relationship. (*Glover v. Glover*, 132 Ill. App. 2d 284, 268 N.E.2d 218 (4th Dist. 1971), and cases cited therein.) There is no requirement that the complaining party be wholly blameless (see, *e.g.*, *Bertram v. Bertram*, 346 Ill. App. 314, 105 N.E.2d 515 (3d Dist. 1952)), nor is it necessary that the conduct be itself a sufficient basis for a divorce by the other party (*Strandquist v. Strandquist*, 22 Ill. App. 2d 107, 159 N.E.2d 513 (2d Dist. 1959)), as the measure of proof and grounds of relief are not the same in cases for separate maintenance as in cases of divorce. *Abraham v. Abraham*, 403 Ill. 312, 86 N.E.2d 224 (1949).

■■ In announcing its decision granting the decree of separate maintenance in the instant case, the trial court stated that the evidence did not show "any failure of duty or misconduct as far as the plaintiff is concerned that has materially contributed to the deterioration of the marriage relationship between the plaintiff and the defendant." As we have seen, however, this speaks only to half the test: for it has long been settled in Illinois that if the separation is with the consent of the plaintiff, she is not without fault within the meaning of the statute. (*Johnson v. Johnson*, 125 Ill. 510, 16 N.E. 891 (1888); *Vock v. Vock*, 365 Ill. 432, 6 N.E.2d 843 (1937); *Bielby v. Bielby*, 333 Ill. 478, 165 N.E. 231 (1929); *Levy v. Levy*, 388 Ill. 179, 57 N.E.2d 366 (1944); *Elston v. Elston*, 344 Ill. App. 233, 100 N.E.2d 635 (2d Dist. 1951).) In *Bielby*, for example, our supreme court held that a wife's continuing to see her husband and on occasion driving him part way home evidenced consent to their living as they were. This, together with her refusal to return to him after he had built a house and requested that she live with him, was held to bar her from a decree of separate maintenance. See also *Barton v. Barton*, 318 Ill. App. 68, 47 N.E.2d 496 (4th Dist. 1943).

■■ At common law, it was the husband's prerogative to choose the domicile of himself and his wife, so long as he acted reasonably; a wife's unjustifiable failure to accompany him was considered desertion or abandonment. (*Kennedy v. Kennedy*, 87 Ill. 250 (1877); *Bateman v. Bateman*, 337 Ill. App. 7, 85 N.E.2d 196 (4th Dist. 1949); *Martin v. Martin*, 62 Ill. App. 2d 105, 210 N.E.2d 590 (1st Dist. 1965). See also Annot., 29 A.L.R.2d 474 (1953), and later case service.) Nor would the law require the husband to do the futile act of finding a suitable home for her in the

new place if the wife in fact would continue to refuse to move. *Bateman v. Bateman*, 337 Ill. App. 7, 15, 85 N.E.2d 196, 200.

The traditional attitude can be ascertained in the following passage from *Babbitt v. Babbitt*, 69 Ill. 277, 279 (1873):

> " * * * It was appellant's clear right to make Michigan his residence, and it certainly was the duty of his wife to accompany him there, which she was strongly invited to do. We understand the domicil of the husband is the domicil of the wife, and it is there she can claim and receive the protection and maintenance of her husband. He was not required to ask her consent to remove to Michigan. In this respect he was the master of his own actions, and it was her duty as a faithful and obedient wife to accompany him there. It is her fault she is not with him to be maintained by him, to aid him in his decrepitude, relieve his sorrows and minister to his afflictions. It may emphatically be said of her, she is living separate and apart from her husband by her own fault, and in total disregard of that vow she made when wedded. She has no claim to the equitable interference of the court. The statute was not made for cases like this."

■■ It may well be doubted whether such a one-sided conception of the marital relation (the husband as "master," the "obedient" wife) survives in the 1970s.[1] We need not, however, attempt to determine the current viability of the rule stated in the *Babbitt* case. For although there are definitely contradictions in the evidence here, it is uncontroverted that the parties' living apart stemmed from the necessity of defendant's working away from Findlay, and was initiated with at least the implied consent of the plaintiff.

■■ The defendant testified that when his place of employment changed, he asked his wife "what she thought about Southern Illinois if I had to go there. That was the only place I had to go, and she said why didn't I take the camper and I could stay in the camper until school was out and then we would discuss it." The plaintiff did not contradict this testimony, although in answer to questions from her counsel, she testified that she did not believe that she had ever suggested that her husband leave the marital residence and that he had never specifically asked her to move to another place. The question here is not, however, whether she suggested that he leave: he had no practicable alternative but to work

---

[1] *Babbitt* was followed in *Karman v. Karman*, 24 Ill. App. 2d 123, 164 N.E.2d 521 (1st Dist. 1960), and the rule there stated was recognized as "valid and well settled" as recently as *Foster v. Foster*, 110 Ill. App. 2d 128, 133, 249 N.E.2d 114, 116 (1st Dist. 1969). But those cases were decided prior to the enactment of the Bill of Rights of the Illinois Constitution of 1970, which guarantees that the equal protection of the laws shall not be denied or abridged on account of sex. Ill. Const. 1970, art. I, §18. See *People v. Ellis*, 57 Ill. 2d 127, 130-33, 311 N.E.2d 98, 100-01 (1974) (holding sex-based classifications constitutionally suspect).

where his job existed, and that was too far away for him to return home every night. We do not think that his departure on the day of his daughter's graduation is sufficient to establish the desertion alleged in the complaint: the parties were already living "separate and apart" at that time; they spent the night together as man and wife on at least three subsequent occasions; and the admitted conversation about moving the house trailer to Southern Illinois took place some six months later.

■■ ■ There is no indication in the record that the plaintiff ever attempted to follow her husband to Southern Illinois, or to dissuade him from accepting employment there. While the evidence may not show such a failure of duty or misconduct on her part as materially to contribute to the disruption of the marriage, neither is there even a single intimation that her husband's moving nearer to his employment was other than with her consent. Therefore the plaintiff did not meet her burden of proving that she was "without fault" within the terms of the separate maintenance statute. It is well established, of course, that where a trier of fact had the witnesses before it, with the opportunity to observe their demeanor and judge the credibility of their testimony, a reviewing court will not disturb a decree unless it is contrary to the manifest weight of the evidence. (*Hoffmann v. Hoffmann,* 40 Ill. 2d 344, 239 N.E.2d 792 (1st Dist. 1968).) However, the force of the general rule is largely dissipated where there is no substantial conflict in the admissible facts. (*Slaight v. Slaight,* 50 Ill. App. 2d 31, 199 N.E.2d 650 (2d Dist. 1964).) Here, there is no substantial conflict in the evidence that the defendant had good reason for living away from his wife and that his so doing was with her consent. We therefore hold that the trial court's determinations that the plaintiff was living separate and apart from her husband without her fault, and that the defendant absented himself without any reasonable cause, were erroneous in law and contrary to the manifest weight of the evidence.

■■ As to the counterclaim for divorce, we agree with the trial court that the defendant failed to sustain its allegations. Statutory grounds for divorce in Illinois include both desertion and extreme and repeated mental cruelty. (Ill. Rev. Stat. 1973, ch. 40, par. 1.) That the divorce statute is to be strictly construed, and a divorce to be granted only for one of the causes enumerated therein, are propositions that require no citation of authority. Here, defendant did not base his counterclaim on desertion, but alleged that the plaintiff was guilty of acts of extreme and repeated mental cruelty, including her failure and refusal to accompany him when his work compelled him to leave Shelby County. We agree with plaintiff-appellee that this pleading was insufficient to state a cause of action based on the statutory ground of desertion.

■■ The generally recognized elements of extreme and repeated mental cruelty are an unprovoked "course of abusive and humiliating

treatment, calculated or obviously of the nature to torture, discommode, or render miserable the life of the opposite spouse, which conduct actually affects the physical or mental health of the spouse." (*Gregory v. Gregory,* 24 Ill. App. 3d 436, 440-41, 321 N.E.2d 122, 126 (2d Dist. 1974).) We do not think that the sum of defendant's evidence, including his testimony as to the nervousness and aggravation allegedly brought on by plaintiff's repeated overdrafts from their joint checking account, rises to the level of extreme and repeated mental cruelty. Even though a marriage may have deteriorated to the point that reconciliation appears impossible, it cannot be terminated by a court without sufficient proof of fault as required by the legislature. (*Sharer v. Sharer,* 39 Ill. App. 3d 818, 350 N.E.2d 779 (5th Dist. 1976); *Matthews v. Matthews,* 36 Ill. App. 3d 508, 344 N.E.2d 21 (2d Dist. 1976), and cases cited therein.) In any event, the trial court's determination that defendant failed to meet the necessary burden of proof on his counterclaim was not contrary to the manifest weight of the evidence.

The trial court allowed $500 to plaintiff for her attorney's fees. This sum was stipulated by the parties to be fair, usual, and customary in a case such as this. The separate maintenance statute empowers the court to make such order with respect to attorney's fees and suit money "as may seem just and equitable, regardless of the disposition of the case." (Ill. Rev. Stat. 1973, ch. 68, par. 22.) The defendant has not challenged the reasonableness of the amount of attorney's fees allowed, and therefore that portion of the decree is affirmed.

■■ As previously indicated, the trial court's decree ordered the defendant to pay $55 per week for support of the parties' daughter Rosemary, plus all her extraordinary medical expenses. The final question for our determination is whether this part of the decree can stand, given our holding that neither the petition for separate maintenance nor the counterclaim for divorce could properly have been allowed. Although this issue was not raised or briefed by the parties, we are impelled to decide it by considerations of judicial economy.

The Divorce Act expressly limits the power of the court to make orders concerning the support of children to cases "[w]hen a divorce is decreed * * *." (Ill. Rev. Stat. 1973, ch. 40, par. 19.) The relevant provision of the Separate Maintenance Act is not so unambiguous. It reads as follows:

> "The court may, upon application of either party, make such order concerning the custody and care of the minor child or children of the parties during the pendency of the cause as may be deemed expedient and for the benefit of the child or children, and may award the custody of the minor child or children of the parties to either party as the interests of the child or children may require and may make provision for the education and maintenance of the

child or children out of the property of either or both of the parties." (Ill. Rev. Stat. 1973, ch. 68, par. 22.)

Should this paragraph be read to empower the court to "make provision for the education and maintenance of the child," even where the rest of the action for separate maintenance fails?

There can be no question that parents are under a continuing legal duty to support their minor children until they reach their majority. Section 15 of the Married Women's Act of 1874 imposes joint and several liability upon both husband and wife for expenses of the family and education of children. (Ill. Rev. Stat. 1973, ch. 68, par. 15.) Section 132 of the Probate Act likewise provides that both parents "have equal powers, rights and duties concerning the minor." (Ill. Rev. Stat. 1973, ch. 3, par. 132.) It is a Class A misdemeanor, under the Non-Support of Spouse and Children Act, to "desert or neglect or refuse to provide for the support or maintenance of his or her child or children under the age of 18 years,[2] in need of such support or maintenance * * *." Ill. Rev. Stat. 1973, ch. 68, par. 24. See also the Revised Uniform Reciprocal Enforcement of Support Act, Ill. Rev. Stat. 1973, ch. 68, par. 101 *et seq.*

■■ The parties are agreed that defendant should provide support for Rosemary, as sought by plaintiff in her petition for separate maintenance. In his counterclaim for divorce defendant stated that plaintiff was a fit and proper person to have the care, custody, and control of the child and that he was "able and desirous of providing a reasonable sum for the support and maintenance of his minor daughter"; he prayed that plaintiff be granted custody and that the court fix his obligation for child support in a just and equitable amount. While we have some reservations about rendering a decision that could be interpreted to suggest that the parties in a case such as this can confer jurisdiction on a court which would otherwise have none (see, *e.g., Chrastka v. Chrastka,* 2 Ill. App. 3d 722, 277 N.E.2d 729 (2d Dist. 1971)), it would seem absurd to require the parties to come back into the same court and relitigate the question of child support. (See Annot., 7 A.L.R.3d 1096 (1966).) Such a decision would be contrary to the spirit of the Civil Practice Act, which declares the legislature's goal that controversies be speedily and finally determined according to the substantive rights of the parties (Ill. Rev. Stat. 1973, ch. 110, par. 4). Furthermore, we think that the trial court could have treated this portion of plaintiff's petition as a suit on behalf of the minor child, rather than a controversy between the parents. (See *Parker v. Parker,* 335 Ill. App. 293, 81 N.E.2d 745 (2d Dist. 1948).) What the trial court could have done in this regard, we are authorized to do by Supreme Court Rule 366 (Ill. Rev. Stat. 1973, ch. 110A, par. 366). We have examined the evidence and find that the trial court's determination of $55

---

[2] We would note that Rosemary Graham will reach age 18 on December 3, 1976.

per week as reasonable child support is fully supported by the record. This part of the decree will, therefore, be affirmed.[3]

A petition was filed by plaintiff for supplementary relief, including attorney's fees on appeal, which the lower court held in abeyance pending determination of this appeal. We therefore remand in order that the court may consider those matters which by order of court remain undecided.

For the foregoing reasons, the decree of the Circuit Court of Shelby County is reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, remanded.

JONES, and G. J. MORAN, JJ., concur.

---

[3] We should point out that the record does not indicate very strongly that defendant was *not* supporting his daughter at the time of trial. We assume that he has been making support payments during the pendency of this appeal.