*In re* MARRIAGE OF SARAH ANN HANSON, Petitioner-Appellee, and CHARLES W. HANSON, Respondent-Appellant.

Second District   No. 2—87—0895

Opinion filed June 1, 1988.

Law Office of Robert A. Chapski, Ltd., of Elgin (Randy K. Johnson, of counsel), for appellant.

M. Katherine Moran, of Drendel, Schanlaber, Horwitz & Tatnall, of Aurora (Susan B. Tatnall, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Respondent, Charles W. Hanson, appeals from the judgment of dissolution of marriage entered by the circuit court of Kane County which dissolved the marriage, distributed the marital property of the parties, and awarded maintenance and attorney fees.

The parties were married in 1959. At the time the marriage was dissolved, petitioner, Sarah Ann Hanson, and respondent were 49 and 51 years of age, respectively. They had three children, two of whom were minors during the proceedings. Respondent was employed by Morton Thiokol as Graphic Arts Director; he had worked for that company since 1967. Petitioner, employed in the first five years of marriage as a graphics artist, stopped working in 1964 to raise the couple's children. In the several years preceding this action, petitioner had partially resumed her graphics career by completing a number of free lance graphics assignments for which she received rather insubstantial payments.

On appeal, respondent raises the following issues: (1) petitioner failed to prove by a preponderance of the evidence that respondent was guilty of extreme, repeated, and unprovoked mental cruelty; (2) a 70/30 distribution of marital assets in petitioner's favor was an abuse of discretion; (3) the maintenance award to petitioner is an abuse of discretion; (4) petitioner failed to rebut the presumption of a gift to the marital estate; and (5) the judgment for attorney fees is excessive and unwarranted.

■ Respondent initially argues that petitioner failed to prove by a preponderance of the evidence that respondent is guilty of extreme, repeated, and unprovoked mental cruelty. Section 401(a) of the statute provides in pertinent part:

"The Court shall enter a judgment of dissolution of marriage if *** one of the following grounds for dissolution has been proved:

(1) That, without cause or provocation by the petitioner: the respondent *** has been guilty of extreme and repeated physical or mental cruelty ***." Ill. Rev. Stat. 1985, ch. 40, par. 401(a).

The statute does not clearly define "extreme and repeated cru-

elty," but case law defines grounds as "a course of unprovoked, offensive conduct toward one's spouse which causes embarrassment, humiliation and anguish so as to render the spouse's life miserable and unendurable, and which actually affects the spouse's physical or mental health." *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 454.

At trial, petitioner testified as to the following. She detailed a course of verbal abuse by respondent which continued throughout their 28-year marriage. This verbal abuse was exacerbated by frequent and excessive use of alcohol.

Petitioner cited specific instances in which she was treated in an abusive manner. On their 25th wedding anniversary, the parties went out to dinner with friends. Respondent drank until his behavior became totally offensive to petitioner, who was devastated by his conduct. Respondent could not get on his coat without waiter's assistance, nor could he drive home. On the drive home, respondent referred to petitioner by their niece's name, and upon reaching home, he fell out of the car, knocking over cans of turpentine in the garage. Petitioner also described a canoe outing, during which respondent's intoxication caused him to become ill. He was unable to accompany petitioner or their friends to dinner. Episodes such as these caused petitioner to stop attending social occasions with respondent.

When respondent was reprimanded for his excessive drinking, he reciprocated by taking petitioner's car keys, checkbook, credit cards, and cash. Petitioner had to spend time hunting for these items, becoming frustrated and upset in the process.

Even when not drinking, respondent belittled petitioner's opinions on almost any subject. Respondent made derogatory remarks about petitioner's background and the poetry that she wrote. On numerous occasions he followed petitioner through the house, speaking to her in derogatory fashion until she closed "the door in his face."

Petitioner's mother, who was afflicted with Alzheimer's disease, lived in the marital residence several months while petitioner searched for a suitable nursing home. Respondent complained about the mother's presence in the home and repeatedly told her he wanted his mother-in-law out of the home. This caused petitioner to become very upset and to seek psychological help. Petitioner sought psychological assistance at other times to deal better with the problems caused by respondent's drinking.

Respondent testified that his relationship with petitioner was very friendly from 1959 to 1974. The marriage had deteriorated since 1974 due, in part, to his wife's absorption in her art studies; nevertheless, respondent wanted to work on keeping the marriage together because

he loved his wife and family.

Respondent argues that petitioner's testimony does not meet the burden of proof necessary to dissolve the marriage under Illinois law. (*Gregory v. Gregory* (1974), 24 Ill. App. 3d 436.) Respondent negates petitioner's testimony that she felt powerless, frustrated, and diminished in the marital relationship because these emotions were not manifested physically. Respondent points out that the only physical element testified to was the knot she felt in her stomach during marital conflicts. But even the "stomach knots," respondent asserts, were based on petitioner's "internalized irrational frustration," not as a result of respondent's behavior.

Also, respondent asserts that case law holds that only sporadic conduct which humiliates or embarrasses a spouse is not sufficient cause to dissolve a marriage. (*Gregory*, 24 Ill. App. 3d at 441.) The evidence, he argues, is not even sufficient to prove sporadic, much less continuing, instances of mental cruelty.

Petitioner responds by distinguishing *Gregory*, the only case cited by respondent, from the case at bar. In *Gregory*, there was testimony of only a few sporadic instances of behavior, some of them occurring four to five years before the trial. These incidents were viewed by the appellate court as uncalculated, unintentional, and isolated. There was also a failure of the complaining party to show lack of provocation. (*Gregory*, 24 Ill. App. 3d at 441.) In the present case, petitioner argues, her testimony indicated a long, continuing, and constant pattern of verbal abuse by respondent, as well as a continuing pattern of respondent's alcohol abuse which was unprovoked by petitioner. Petitioner avers that respondent's conduct, unlike that of the respondent in *Gregory*, was calculated and of a nature to make his wife's life miserable.

We note that the reviewing court gives substantial deference to the trial court's findings in determining whether mental cruelty exists. (*Hollo v. Hollo* (1985), 131 Ill. App. 3d 119.) The trial court had the opportunity to observe petitioner's demeanor, and the court determined that she appeared to be a nervous and high-strung individual. In determining the effect on the complaining spouse, the emotional behavior of that spouse is a critical factor. (*In re Marriage of Mitchell* (1981), 103 Ill. App. 3d 242.) This observation, in addition to petitioner's largely unrebutted testimony of continuing humiliation and frustration generated by respondent, sufficiently supports the court's finding that unprovoked mental cruelty existed.

■ ■ Next respondent argues that the trial court abused its discretion by awarding petitioner approximately 70% of the marital as-

sets and maintenance of $60,000 over five years. Initially, respondent acknowledges that the trial court has the discretion to distribute marital property in what it considers just proportion (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31), and that the mere unequal division of assets does not constitute an abuse of discretion. (*In re Marriage of Carini* (1983), 112 Ill. App. 3d 375.) Further we note that in reviewing the distribution of marital property we will find an abuse of discretion only where no reasonable person would adopt the trial court's decision. (*In re Marriage of Stephenson* (1983), 121 Ill. App. 3d 698.) Reviewing the facts of the instant case, we do not find the trial court abused its discretion. The critical issue here is the vast difference in future earning capacities of the parties. (121 Ill. App. 3d at 699.) Respondent has headed Morton Thiokol's graphics department since 1972. During the proceeding, his salary was approximately $50,000. Respondent also performed freelance graphics jobs which have earned him as much as $11,000 or more a year. Conversely, petitioner has been a homemaker since 1964. Entering her early fifties with no job experience over two decades past, it is highly unlikely that petitioner's earning capacity will ever approach that of respondent's. Indeed, at a post-decree hearing, petitioner testified that employers were telling her at interviews that her long absence from the working world negatively affected her employment prospects. Petitioner's earnings from her free-lance graphics jobs were negligible. In sum, respondent has a much greater opportunity for future acquisition of income and assets than petitioner. As a result, we find that the trial court properly relied on this disparity in earning capacity in dividing the marital property. See Ill. Rev. Stat. 1985, ch. 40, par. 503(d)(7).

■ Respondent next argues that the trial court abused its discretion in ordering him to pay petitioner maintenance of $1,000 per month for the subsequent five years. Maintenance was nonmodifiable and nonterminable. The court also awarded child support in the amount of $825 per month, a sum which is to be reduced to $700 per month in two years and will terminate in three years. An award of maintenance is a matter within the sound discretion of the trial court and will not be reversed on appeal unless it amounts to an abuse of discretion. (*In re Marriage of Los* (1985), 136 Ill. App. 3d 26.) Maintenance may be awarded where the trial court finds that a spouse lacks sufficient property to provide for her reasonable needs and is otherwise without sufficient income. Ill. Rev. Stat. 1985, ch. 40, par. 504(a).

Respondent asserts that the trial court never made a finding pursuant to section 504(a), which provides the conditions for granting

maintenance. Yet respondent admits that it is not necessary for the trial court to designate specifically the portion of section 504(a) relied upon, but such a basis must be established by the record. Respondent further argues that the trial court, by failing to order the sale of the marital residence in which petitioner had an $80,000 equity interest, created an illusory need for maintenance.

Additionally, respondent argues that in making the maintenance award, the trial court ignored the receiving spouse's affirmative duty to seek employment. (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(2).) Respondent points to the trial court's finding that petitioner had very substantial artistic talent and should be able to find reasonable interim employment while she completes her education. Because petitioner has not found such employment, respondent argues that she has not adhered to the affirmative duty to find employment.

■ Initially, we find that it is implicit in the trial court's granting of maintenance that it took into account the conditions outlined in section 504(a). It is evident that the court considered petitioner to lack sufficient property to care for her needs and that she was either unable to support herself through appropriate employment or that she was otherwise without sufficient income. As to respondent's assertion that the court could have ordered the sale of the marital home if it believed petitioner required "liquid assets," the trial court certainly had the discretion to distribute the marital home to petitioner and not require her to sell it for the proceeds.

The court viewed the marital home as petitioner's share of the marital estate. As such, it was not incumbent upon the court to order liquidation of that asset and have the proceeds substitute for maintenance, an award which was entirely proper under these circumstances.

A close review of the record demonstrates to us that this is a case of a recently divorced woman who, though talented, has been absent from the workaday world and, predictably, is having trouble reestablishing herself after 20-plus years of homemaking. It is evident that the trial court's award of maintenance was to provide for petitioner during reentry into a life where she must sustain herself.

Moreover, in reaching the maintenance award, the trial court properly took into account the great disparity in the parties' potential future earning capacities, the length of the marriage, and the age of the spouse receiving maintenance. Moreover, contrary to the assertions of respondent, the record indicates that the maintenance award is very appropriate. A number of months after the marriage had been dissolved, petitioner had been told by at least one employer that her

absence from the job market hurt her chances for employment. She also was having significant problems making tuition payments to the Art Institute of Chicago's degree program, an indication of her need for maintenance. Accordingly, we find that the trial court did not abuse its discretion in awarding petitioner $1,000 per month for a five-year period.

■ Respondent next argues that petitioner failed to rebut the presumption of a $42,219.19 gift to the marital estate and, therefore, was not entitled to a reimbursement in the division of marital property. After reviewing the trial record, we find that this is a nonissue. We agree with petitioner, who asserts that the trial court did not actually reimburse her nonmarital estate for her contributions to the marital estate.

In its letter of opinion, the trial court wrote in pertinent part:

> "The wife has demonstrated substantial contributions of nonmarital funds to the marital estate by clear and convincing evidence. Pursuant to Sec. 503(c)(2) of Chap. 40, IRS (1985) she is entitled to reimbursement for those expenditures."

Nevertheless, the record gives no indication that the court ever figured in this alleged reimbursement to determine the proper distribution of marital property. Accordingly, we find that petitioner was not reimbursed $42,219.19, and therefore, we need not address this issue.

■ Finally, respondent argues that the judgment for him to pay $5,000 of petitioner's attorney fees was excessive and an abuse of the trial court's discretion. An award of attorney fees is within the sound discretion of the trial court, and the award will only be reversed for an abuse of discretion. *In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38.

Among the factors used in determining the reasonableness of an award of attorney fees are the relative financial positions of the parties. (*Ransom*, 102 Ill. App. 3d at 40-41.) As noted above, the disparity between the financial position of the parties was significant, and, therefore, it was not an abuse of the trial court's discretion for it to order respondent to pay $5,000 of the $9,486 of attorney fees charged to petitioner.

For the reasons stated above, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

NASH and INGLIS, JJ., concur.