Edward B. Akin, Plaintiff-Appellee, v. Francis B. Akin, Defendant-Appellant.

Gen. No. 11,182.

Fourth District.

June 24, 1970.

John E. Howarth, of Springfield, for appellant.

John J. O'Toole, of Chicago (Concannon, Dillon, Snook & Morton, of counsel), and Robert D. Brodt, of Springfield, for appellee.

RICHARDS, J.

The cause here under consideration is a consolidation of a separate maintenance proceeding and a divorce proceeding and comes on an appeal by the wife from a decree granting a divorce to the husband on the grounds of extreme and repeated mental cruelty. The questions presented by the wife for review are whether her conduct was sufficient to constitute extreme and repeated mental

cruelty within the meaning of the Divorce Act, and, if so, whether the husband carried the burden of proving that he did not provoke such conduct.

Originally herein, on June 27, 1967, a decree for separate maintenance was awarded the wife after an uncontested hearing on a complaint and answer. The uncontroverted evidence given at that hearing was very short and although (as such was later brought out at the divorce hearing) the wife was aware that her husband had been publicly dating a lady friend, who will be referred to herein as Mrs. T., for some years prior thereto, the only evidence presented was to the effect that on October 28, 1966, the husband left their home; that the wife asked him not to leave; that the husband had not returned to the home and that the wife did not do anything to provoke the husband's leaving. No evidence was presented by the husband at that hearing. The husband's complaint for divorce was filed on April 25, 1968, and alleged that the wife had been guilty of extreme and repeated mental cruelty between the dates of August 20, 1967, and September 15, 1967, and that such conduct caused the husband great mental anguish and emotional distress, all without provocation or cause on his part. On April 3, 1969, the decree for divorce here appealed from was granted to the husband after a contested hearing on the complaint and answer.

In the review of cases involving cruelty for divorce purposes, it is necessary to view the conduct in question in regard to the factual background of the particular case. This is recognized in 24 Am Jur2d, Divorce and Separation, § 32 (p 203) where it is stated:

"It is well recognized that no exact inclusive and exclusive definition of legal cruelty can be given, and the courts have not attempted to define it, but generally content themselves with determining whether

> the facts in the particular case in question constitute cruelty."

In support of the allegations of extreme and repeated mental cruelty on the part of the wife, the husband testified that the wife had, between the dates above mentioned, made several phone calls to him at his office in his place of work and during such calls she: called him vile names; said that he was not a fit father to their son; said that most of the wife's ills were the husband's fault; said that she was going to kill herself; said that the husband was the father of their grandson and that she was going to call the governor. The significance of her threat to call the governor was that the husband held his office as a political appointee. The husband also testified that other people in the office where he worked knew about some of the calls, and this caused him to be embarrassed. Regarding these phone calls, it was brought out in the cross-examination of the husband and by the testimony of the wife that: the couple's son and the son's wife were having marital difficulties and that the reason for the calls was that the wife was urging the husband to talk to their son about the son's leaving his wife; that as to the wife's threat of suicide, the husband stated that he did not believe her as he had heard such threats so many times before that he got used to it, and that what the wife had actually said regarding the grandson was that the husband looked so much like the grandson that he could have been the father. On cross-examination the husband testified that he did not know of anyone else having listened to the phone calls. Besides the evidence of the phone calls, the only other evidence presented by the husband in support of his allegations was testimony that the wife had confronted the husband in the home of Mrs. T., and during the 15 or 20 minutes she was there an argument and a scuffle occurred involving the wife, the husband, Mrs. T. and Mrs.

T's daughter, wherein some of the participants were scratched, were pushed down, had their glasses knocked off and such, in an attempt to cause the wife to leave Mrs. T's home. As to the effect the conduct of the wife had on the husband, the husband testified that the phone calls and the confrontation in Mrs. T's home had a terrible effect on him because he was embarrassed no end and had, about a year prior to the hearing, gone to a doctor because he was nervous and upset. The other participants in the argument and scuffle at Mrs. T's home testified that the husband was very embarrassed at the incident. Other testimony was introduced to the effect that during the time complained of the husband seemed nervous and not the same person he had been. The wife's testimony as to the reason for her visit to Mrs. T's home while her husband was there was that in a phone conversation earlier that day he had refused her request that he talk to their son regarding the son's marital problems, and that she had then followed him to Mrs. T's home to try further to persuade him to do so.

Regarding the relationship and the background thereof between the husband and Mrs. T., the evidence showed: that after the parties had been married some 20 years they both met Mrs. T. at a picnic some 6 years before the hearing, and that some time after the picnic the husband called Mrs. T. and asked her to go out to dinner, which she did; that they had seen each other regularly after that; that on weekends the husband had come to Mrs. T's home at noon and stayed until late at night and they had been by themselves during these periods; that Mrs. T. had picked him up at his place of work and they had embraced and kissed in public. The husband testified that they had seen each other quite frequently after the separate maintenance decree as he felt a need for female companionship, but that he had no romantic interest in Mrs. T. The evidence further showed that the

husband had Mrs. T's picture on his desk, and that he and Mrs. T. exchanged gifts at Christmas and that the husband bought presents for Mrs. T's daughter. A private investigator testified that while this couple was under her surveillance, the husband and Mrs. T. had met and embraced in front of the building where he worked, and later in a parking lot near a restaurant in which they ate; that later they were together in a parked car at night along a country road and that his car had been parked next to Mrs. T's home both in the daytime and late at night. The wife testified that when she came into Mrs. T's home on the occasion of the abovementioned scuffle, Mrs. T. was in the kitchen ironing the plaintiff's clothes. This relationship had been known to the wife, as Mrs. T. testified that the wife had phoned her many times, and on one occasion visited her home to discuss her relations with the husband and to ask her to leave her husband alone. At the trial the wife attempted to present further evidence of the husband's relationship with Mrs. T., to the effect that the husband had admitted to the wife that he had had sexual relations with her, but an objection to such was sustained, the court stating that as these matters could have been brought out at the prior separate maintenance hearing the proof at the divorce hearing would be limited to occasions after the separate maintenance decree. This ruling was erroneous as the issue decided in the separate maintenance proceeding was whether the wife was living apart from the husband without fault on her part, and such issue could have been decided for her without adjudicating whether grounds for divorce did or did not exist. Van Dolman v. Van Dolman, 378 Ill 98, 37 NE2d 850.

■ Now, in view of this evidence, we will first take up the question as to whether such supported the finding that the wife was guilty of extreme and repeated mental cruelty to the husband. The Illinois courts have inter-

preted the Divorce Act twice since mental cruelty was added by the 1967 Legislature as grounds for divorce, those cases being Stanard v. Stanard, 108 Ill App2d 240, 247 NE2d 438, and Hayes v. Hayes, 117 Ill App2d 211, 254 NE2d 288. Both cases adopt the widely recognized doctrine that:

". . . Whether certain acts will constitute physical or mental cruelty still depends upon the total factual background surrounding the conduct under question. This includes the particular emotional and personal makeup of the parties, and the varying circumstances under which any of the incidents occurred that may have given rise to the acts."

Thus the conduct complained of is regarded as to its subjective effect on the complaining spouse. 24 Am Jur2d, Divorce and Separation, § 36 (p 206) states it thus:

"The question whether the misconduct complained of constitutes cruelty and the like for divorce purposes is determined primarily by its effect upon the particular person complaining of the acts. The question is not whether the conduct would be cruel to a reasonable person or a person of average or normal sensibilities, but whether it would have that effect upon the aggrieved spouse. That which may be cruel to one person may be laughed off by another, and what may not be cruel to an individual under one set of circumstances may be extreme cruelty under another set of circumstances."

As to what the actual effect upon the complaining spouse must be, the conduct must have been such that would necessarily and inevitably cause the aggrieved one's life, person or health to be endangered or to render his life miserable and unendurable. Stanard v. Stanard,

165

108 Ill App2d 240, 247 NE2d 438; Johnson v. Johnson, 125 Ill 510, 16 NE 891.

 In applying these well recognized doctrines to the factual background surrounding the conduct under question, the following are our views: It may be conceded that the wife was intemperate in her language and conversations in the phone calls to her husband and did not act in a reasonable manner in refusing to leave Mrs. T's home when requested, causing her forcible ousting. However, in conceding that her conduct was unreasonable, such does not necessarily constitute extreme and repeated mental cruelty toward the husband when viewed with the facts in this case. It was the husband's burden of proving that the acts complained of were sufficient to cause distress, and did in fact, endanger his health or render his life as a husband miserable and unendurable. The husband admitted that he knew of no one else who knew of the phone calls. The receptionist was called in an attempt to show knowledge of the calls by others to his embarrassment, but she stated that she did not inform the husband of her knowledge of them until the day before the trial. His wife's remarks that their grandson looked like him was seized upon for his allegation that she had accused him of fathering the child and thus accused him of adultery. Such an inference could hardly be drawn from such remark. He testified that the altercation in Mrs. T's home embarrassed him no end. However, his embarrassment could just as well have been caused by the fact that while he was visiting Mrs. T., his legal wife walked in. Testimony by the receptionist, Mrs. T, and Mrs. T's daughter was presented to show that during the time complained of, the husband was nervous and not the same person he had been. It would seem that this nervousness could be just as attributable to the fact that he could not get rid of his wife, as the record shows that after the 1967 Legislature amended

166

the Divorce Act he had filed two prior divorce actions which had been dismissed. Even so, conduct by one spouse that would cause the other spouse to become nervous and upset under the circumstances here could not be held to be extreme mental cruelty. Nor could the conduct be held to have made his living as the husband of the wife unendurable as he had already left the home without fault on the wife's part, as was found in the aforesaid decree of separate maintenance.

■ In regard to the husband's burden of proving lack of provocation, in order to sustain such the husband testified that to his knowledge he did nothing to cause his wife to act like she did. He blandly contends in his brief in this court that his relationship with Mrs. T. was purely social in nature and not of a sexual nature, and that if the wife had any provocation, "it was based upon the inter-abstract workings of her mind and not upon any acts of the plaintiff." As against this contention, the record shows an open, public, frequent, notorious and affectionate association with Mrs. T. over a period of six years. Such a display of affection by the husband to Mrs. T. and Mrs. T's daughter, rather than to their son, and the husband's undenied refusal to aid the wife in resolving the troubled affairs of their son, would naturally cause the wife's resentment and draw intemperate remarks and actions from her. We hold that the husband did fail to necessarily prove lack of provocation for the conduct of his wife.

■ We recognize, as the trial court apparently did, that divorce might be a better solution than separate maintenance, as the parties have apparently separated permanently without a chance for reconciliation. However, the wife elected to have her remedy in separate maintenance and is contesting the complaint for divorce. Divorce cannot be forced upon her, as divorce can only be granted upon sufficient proof of the grounds set forth

under statute. Anything short of the requirements therein will not suffice. Stanard v. Stanard, 108 Ill App2d 240, 249, 247 NE2d 438. The misconduct on the part of the husband was the cause of the parties living apart, and provocation for the conduct the husband complains of as grounds for divorce. He cannot make his own misconduct the cause of his freedom from the bonds of matrimony. The mental anguish and emotional distress he complains of is the harvest of his own sowing.

For the foregoing reasons, the decree of the Circuit Court for divorce is reversed, and this cause is remanded to the Circuit Court with directions to reinstate the decree for separate maintenance.

Reversed and remanded.

SMITH, P. J. and TRAPP, J., concur.