*In re* MARRIAGE OF OLIVE CUSHMAN BLOUNT, Petitioner-Appellee, and HOWARD D. BLOUNT, Respondent-Appellant.

Fourth District   No. 4—90—0195

Opinion filed May 24, 1990.

Scott D. Drazewski, of Luedtke, Hartweg & Turner, of Bloomington, for appellant.

Donald W. Wilcox, Jr., of Thomson & Weintraub, of Bloomington, for appellee.

JUSTICE LUND delivered the opinion of the court:

Howard D. Blount, respondent, appeals from a bifurcated judgment dissolving his marriage with Olive Cushman Blount, petitioner.

Respondent's only argument on appeal is that appropriate circumstances did not exist authorizing the bifurcated judgment dissolving the marriage.

## THE LAW

Section 401 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 401) provides in part:

> "The court may enter a judgment for dissolution which reserves any such issues either upon (i) agreement of the parties, or (ii) motion of either party and a finding by the court that appropriate circumstances exist.
>
> The death of a party subsequent to entry of a judgment for dissolution but before judgment on reserved issues shall not abate the proceedings." (Ill. Rev. Stat. 1987, ch. 40, par. 401(b).)

Our supreme court declared the necessity for "appropriate circumstances" prior to the adaption of the statute, including the term:

> "[T]he court could likely be required to adjudicate marital-property rights that have become entangled with the supervening rights of third parties, including subsequent spouses. Additionally, entering a judgment of dissolution prior to property disposition would complicate, rather than simplify, matters with respect to the rights of a surviving spouse in the event of an intervening death. Other complications that can ensue if a judgment of dissolution is not deferred until disposition of the other matters include the loss of ability to file joint income tax returns, the loss of medical insurance coverage, and the loss of marital-property treatment for property accumulated during the intervening period between the entry of the judgment of dissolution and the final disposition of property rights. See Ill. Ann. Stat., ch. 40, par. 401(3), Historical and Practice Notes, at 105-06 (Smith-Hurd 1980). See generally *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 572-73.

We therefore believe that sound policy reasons militate against an interpretation of section 401(3) that gives a trial judge unfettered discretion to bifurcate a judgment of dissolution. We do, however, recognize that certain circumstances will justify bifurcating a judgment. We conclude, as did the appellate court based upon the historical and practice notes, that appropriate circumstances for entering a judgment of dissolution, while reserving questions of child custody, support, maintenance or property disposition, include, but are not limited to,

the following: Where the court does not have *in personam* jurisdiction over the respondent; where a party is unable to pay child support or maintenance if so ordered; where the court has set aside an adequate fund for child support pursuant to section 503(d) of the Act; or where the parties' child or children do not reside with either parent. We do not attempt to envision all the possible appropriate circumstances." (*In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 199, 443 N.E.2d 541, 545.)

In *In re Marriage of Bogan* (1986), 116 Ill. 2d 72, 80-81, 506 N.E.2d 1243, 1246, the *Cohn* case was relied upon in holding that hampering performance of social functions for business reasons did not constitute appropriate circumstances.

In *In re Marriage of Kenik* (1989), 181 Ill. App. 3d 266, 536 N.E.2d 982, the facts that the respondent was pregnant by another man, who was willing to marry her and provide for her and her children, taken with the inability of the petitioner to support his children, were held sufficient to meet the appropriate circumstances test. The *Kenik* decision emphasized the readily identifiable and easily divided assets, the legitimacy issue, prior cessation of filing joint tax returns, and petitioner's late objections to bifurcation in the litigation chronology. *Kenik*, 181 Ill. App. 3d at 277-78, 536 N.E.2d at 989.

## THE FACTS

Petitioner and respondent were married on May 25, 1979, when petitioner was 64 years of age and respondent was 57. There are no children of the parties. With few exceptions, the major assets of the parties have been kept separate. Both parties were employed when married. Petitioner went into the marriage with more assets, and both now receive social security and work-related annuities. A premarital agreement was executed by the parties on May 14, 1979, which provided in part:

"4. In the event that the parties should separate or become divorced, then in such event each of the parties shall retain such property as they had at the time they entered into the marriage, plus any increase thereof and diminished by any part thereof that has been consumed during the marriage."

Under the agreement respondent would, in absence of separation or divorce if he survives petitioner, receive petitioner's automobile, engagement ring, and $10,000. Other less significant benefits would also exist.

Petitioner has been ill for several years. She produced evidence that her depression, which has led to a suicide attempt, has been ag-

gravated by respondent's argumentative and sullen nature. She is now cared for, under the control of her daughter, at a nursing home.

The medical evidence indicates severe emotional and physical problems. It was testified that her condition is aggravated by her fear that respondent will obtain some of her assets on her death. Petitioner testified that visits from respondent depress and irritate her.

## TRIAL COURT RULING

The trial court entered an order which provided in part:

"7. Appropriate circumstances exist to warrant the entry of a Judgment for Dissolution of Marriage while reserving issues of maintenance and the disposition of property.

8. A Judgment for Dissolution of Marriage should be entered herein."

In giving his oral decision, the trial judge said:

"[A]nd there is not the slightest doubt in my mind that Mrs. Blount is extremely concerned about these things, even if it is unlikely, in the Court's mind, that those fears are justified. They are still real, and I think it is having a profoundly negative effect on her mental health.

And ***, I think when you weigh that, and the fact that I believe if the Court does grant a dissolution of marriage today, that that will remove a great burden from her shoulders, and will be of assistance to her ***, definitely mentally and physically. When you weigh that importance, in light of the other considerations which militate against a bifurcated hearing, I find very little to *** stand on."

We agree.

## THE DECISION

The *Cohn* decision enumerated certain appropriate circumstances which will justify bifurcating a judgment. Except for the lack of *in personam* jurisdiction, they related to the lack of problems with child support. The court emphasized that no attempt was being made to envision all the possible circumstances where such a ruling would be appropriate. See *Cohn*, 93 Ill. 2d at 199, 443 N.E.2d at 545.

The *Bogan* decision stated:

"The appropriate circumstances for bifurcating a judgment, as referenced in section 401(b) and enumerated in *Cohn*, are narrowly drawn. If trial courts were allowed unfettered discretion to bifurcate a judgment of dissolution, the inequities and complications envisioned by this court in *Cohn* would result.

\* \* \*

   While we did not attempt to set forth an exhaustive list of appropriate circumstances in *Cohn,* we conclude here that the reasons advanced for bifurcation must be of the same caliber as those enumerated in *Cohn.*" (*Bogan,* 116 Ill. 2d at 79-80, 506 N.E.2d at 1246.)

As we have stated, Bogan's so-called appropriate circumstance basically involved his social and community participations.

   ■ Of the four specific reasons (which we recognize were not intended to be exhaustive), the only one which we see applicable to the present case is based on the theory that dissolving the marriage prior to property distribution would complicate matters with respect to the surviving spouse in the event of an intervening death. No children exist. Any additional tax burden will be upon the petitioner, who has the larger income. No medical insurance problem was made known to the trial court, and there is no indication that there will be additional marital property acquired before the final hearing.

   We are concerned with a relatively short marriage and the fact that most property acquired before the marriage was held in the sole ownership of the party bringing the assets into the relationship. If a premarital agreement did not exist, section 503 of the Act would appear to dictate the division of the various significant assets.

   This court is reluctant to give much weight to the effect of one of the two parties dying before the final hearing. Why should we deny the emotional benefit to the petitioner—because respondent *might* receive more assets if petitioner predeceases respondent before the final judgment?

   ■ We conclude the evidence before the trial court did not establish a financial entanglement which necessitated a delay in the judgment dissolving the marriage. All necessary reservations were provided for in the trial court's judgment. In this case, benefit to the emotional status of an elderly, very ill woman, was correctly determined to be "appropriate circumstance."

Affirmed.

GREEN and McCULLOUGH, JJ., concur.