BETTY SUE COPELAND *et al.*, Executrixes of the Estate of Margaret Betty McLean, Deceased, Petitioners-Appellees, v. CHARLES ROBERT McLEAN, Respondent-Appellant.

Fourth District   No. 4—01—0567

Argued December 12, 2001.—Opinion filed February 6, 2002.—Rehearing denied March 6, 2002.

Peggy J. Ryan (argued), of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellant.

Kelli E. Gordon (argued), of Feldman, Wasser, Draper & Benson, of Springfield, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

On July 5, 2001, the trial court entered a judgment of dissolution of the marriage of petitioner Margaret Betty McLean (petitioner) and respondent Charles Robert McLean (respondent). Petitioner, age 71 at the filing of the petition for dissolution, was in the end stages of cancer and sought a divorce from respondent, age 66, prior to her death, claiming mental cruelty as grounds for the dissolution. Finding such grounds after a hearing, the trial court entered the judgment of dissolution but reserved all other issues.

Respondent appeals the finding as to grounds, but also the entry of the dissolution without a disposition of property. Further, respondent appeals the trial court's denial of his motion for an independent medical or mental examination of the petitioner. As to all three issues, we find no error and affirm the trial court's judgment.

## I. BACKGROUND

Petitioner and respondent were married on May 20, 1977, in Springfield, where they have continuously resided ever since. Both petitioner and respondent had children from previous marriages, and no children were born to the 24-year marriage. In 1982, both petitioner and respondent executed similar wills, each naming the surviving spouse as executor and beneficiary of the majority of each party's estate.

In June 1993, petitioner was diagnosed with endometrial carcinoma and was treated, but she relapsed in October 1996. The carcinoma advanced further, and in August 2000, at the suggestion of her doctors, petitioner entered a hospice program. At all times relevant to this appeal petitioner was under continuous medical care. By the time of the filing of the initial petition for dissolution in April 2001, petitioner had exhausted all chemotherapy options and was terminally ill.

On April 11, 2001, petitioner filed a petition for dissolution of marriage, alleging extreme and repeated mental cruelty by respondent as grounds for dissolution. The same day, petitioner filed a motion for preliminary injunction to restrain respondent from transferring any of the marital assets, the majority of which were held in joint tenancy. Respondent was served with the petition and the motion for preliminary injunction that same day, April 11, 2001.

The following day, April 12, 2001, petitioner filed a motion for final judgment of dissolution, in essence suggesting petitioner's deteriorating health mandated the entry of immediate dissolution. In support of this motion, petitioner alleged she had already exceeded her life expectancy of October 2000 and her life expectancy was unknown. Further, petitioner alleged the majority of the marital assets were held in joint tenancy with respondent, but she wished to "dispose of her just portion of the assets" prior to her death.

On April 12, 2001, the trial court issued a temporary restraining order prohibiting respondent from transferring, withdrawing, or otherwise encumbering the parties' marital assets. The order further authorized petitioner to liquidate $10,000 worth of the parties' illiquid assets and granted petitioner possession of one of the parties' vehicles. The following day the court entered a similar order, directing liquidation of $10,000 worth of the parties' treasury notes.

Respondent countered on April 17, 2001, with a motion to strike the temporary restraining order as being entered without sufficient notice and despite the availability of what respondent alleged were adequate legal remedies. The same day, respondent moved to dismiss the temporary restraining order, the petition for preliminary injunction, the petition for dissolution, and the motion for judgment. The crux of respondent's arguments was as follows: due to the treatments petitioner was receiving, which included morphine, petitioner could not make legal decisions on her own and was being unduly influenced by her children for their financial gain. In short, respondent alleged, petitioner did not "have legal capacity to sue." Petitioner countered these motions on April 19, 2001, by filing a response including affidavits of petitioner's physician and a nurse responsible for petitioner's care. Both stated, despite the medications petitioner was taking, petitioner was alert, oriented, and capable of making decisions.

In the meantime, on April 26, 2001, petitioner executed a new will, making a series of detailed dispositions of her personal property to her two daughters and several of her grandchildren. While the will recited the fact of petitioner's marriage to respondent, a clause in the will stated, "I have intentionally made no provisions in this will for my husband, [respondent], as at the time of this will I am in the process of obtaining a dissolution of marriage from him."

On May 15, 2001, petitioner scheduled an emergency grounds hearing for May 17, 2001. Respondent filed a motion to continue, noting the parties were scheduled to meet with a conciliation counselor on May 24, 2001. The court allowed this motion and set the grounds hearing for June 21, 2001.

But on June 14, 2001, petitioner again filed an emergency motion

for a hearing on grounds, stating petitioner's health was declining precipitously, so her life expectancy was not more than several days. Petitioner reiterated her desire to be divorced from respondent prior to her death so she might dispose of her portion of the jointly held marital assets. Petitioner also served notice of an evidence deposition of petitioner to be conducted the same day, June 14, 2001, at 6 p.m. Respondent's counsel received these notices at approximately 4:30 p.m. on June 14, 2001. Respondent's counsel attempted to file a motion to quash, but counsel's attempts to contact the trial court for a hearing on the motion were unsuccessful. The evidence deposition was conducted the same day without respondent or respondent's counsel present.

At the deposition, petitioner was questioned about her desire to be divorced from respondent. Initially, petitioner incorrectly stated the date of her marriage to respondent as September 20, 1979, then stated the date of her marriage was May 20, 1979. Petitioner affirmatively stated her desire to be divorced from respondent, stating he "downgraded her constantly" and shouted expletives at her. According to petitioner, respondent did not want petitioner to have any friends and became angry when she interacted with friends. When asked if respondent had ever told her he hoped she dies, petitioner replied in the affirmative. Further, petitioner stated her belief respondent had not been giving her the proper amount of medicine, which had exacerbated her condition.

The trial court, on June 15, 2001, entered an order commencing a grounds hearing and received the evidence deposition of petitioner taken the previous day. The court then granted respondent's motion to continue the hearing until June 21, 2001. The same day, respondent filed an answer to the petition for dissolution as well as the motion to quash the evidence deposition. On June 20, 2001, respondent issued a subpoena compelling the petitioner's appearance at the grounds hearing on June 21, 2001, the following day.

On June 21, 2001, the day of trial, respondent filed a motion to disclose witnesses, as well as a motion for extension of time to retain an expert witness who would "ascertain [petitioner's] competency to testify." This latter motion, as well as petitioner's motion to quash the subpoena compelling the appearance of petitioner, was taken with the case by the trial court.

The trial then proceeded without petitioner being present. Petitioner's counsel called respondent and questioned him about his behavior toward petitioner. Respondent denied the allegation he had intentionally given petitioner less medicine than prescribed. Respondent further denied he had made any disparaging remarks about

petitioner or had shouted any expletives at her. Additionally, respondent denied discouraging petitioner from having friends.

Petitioner called several witnesses to testify as to respondent's mistreatment of petitioner, including petitioner's brother and sister-in-law. All of these witnesses testified respondent cursed at petitioner and acted impatiently around petitioner, expecting her to leave a restaurant when he was ready, without regard to petitioner's readiness. Respondent denied all such testimony, claiming not to have seen several of the witnesses in as much as five years. Respondent called a witness of his own, who substantiated respondent's denials of mistreatment of petitioner. Respondent further testified he wished to remain married to petitioner.

After hearing the evidence presented and continuing the trial, on June 26, 2001, in a docket entry, the trial court entered a judgment of dissolution, finding petitioner:

> "has established by competent evidence that [respondent] on occasion treated her badly. [Petitioner] has established that said conduct had an adverse effect on her which is necessary for a finding of mental cruelty."

The court directed counsel to prepare a bifurcated judgment order and submit it to the court for approval.

The next day, June 27, 2001, respondent filed a motion to vacate the findings, for reconsideration, for an opportunity to be heard and for denial of entry of judgment, alleging there had been no finding, pursuant to section 401(b) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/401(b) (West 2000)), that "appropriate circumstances" existed for the entry of a bifurcated judgment of dissolution. Critical to this assertion was the fact respondent had not had an opportunity to cross-examine petitioner. Upon this motion, the court delayed execution of the judgment to permit respondent to cross-examine petitioner and took both motions under advisement.

Pursuant to this order, an additional evidence deposition of petitioner was conducted on June 29, 2001. At this deposition, counsel for respondent was given a full and complete opportunity to question petitioner. Over the course of the examination, petitioner again asserted her desire to be divorced from respondent, stating he had been deliberately cruel through constant verbal abuse. Petitioner again asserted her allegation respondent had purposefully neglected to give her the correct dosage of medicine.

After this additional deposition, respondent filed a motion for an independent mental and physical evaluation of petitioner, again claiming petitioner lacked the necessary "cognitive ability to make deci-

sions regarding a dissolution of her marriage to respondent." Respondent also named a board-certified geriatric psychiatrist to perform the evaluation. Petitioner opposed this motion by written response submitted on July 5, 2001.

The same day, July 5, 2001, the court entered a final written order of dissolution, reserving all issues other than grounds. Addressing the respondent's pending motions in a separate order, the court took notice petitioner was out of the hospital and in a nursing home and was being kept alive at her request pending a dissolution of her marriage. The court then received the June 29, 2001, evidence deposition of petitioner and stated the original finding as to grounds remained unchanged. Further, the court denied the respondent's motion for an independent medical evaluation, as well as the motions to vacate and reconsider.

Respondent then appealed to this court on July 6, 2001, making a motion for an accelerated docket on July 13, 2001. This court denied his motion, and on July 20, 2001, petitioner died. While the executrixes of petitioner's estate have been substituted for petitioner for purposes of this appeal, we refer hereinafter to petitioner and the executrixes as "petitioner."

This appeal followed.

## II. ANALYSIS

On appeal, respondent has raised three issues: (1) the denial of the independent physical or mental examination constituted error, (2) the trial court erred in finding mental cruelty as grounds for the entry of dissolution, and (3) the entry of a bifurcated judgment of dissolution was error. We disagree as to all three issues and affirm.

### A. The Denial of an Independent Physical or Mental Examination Was Proper

■ We first address respondent's contention the trial court's denial of the motion for an independent physical or mental examination was improper. Motions for an independent physical or mental examination are generally brought under Supreme Court Rule 215(a), which provides:

> "In any action in which the physical or mental condition of a party *** is in controversy, the court, upon notice and *** on motion made within a reasonable time before the trial, may order the party to submit to a physical or mental examination ***." 134 Ill. 2d R. 215(a).

The provisions of this rule are not mandatory but, rather, vest broad discretion in the trial court to determine whether a physical examination should be ordered. *Roberts v. Norfolk & Western Ry. Co.*, 229 Ill.

App. 3d 706, 720-21, 593 N.E.2d 1144, 1154 (1992). Thus, we review the trial court's decision to grant such an examination only for an abuse of discretion. *Ford v. Herman*, 316 Ill. App. 3d 726, 736, 737 N.E.2d 332, 341 (2000).

■ Under the facts of the instant case, we conclude the trial court did not abuse its discretion in denying the motion for an independent physical or mental examination. Respondent's motion with respect to the independent examination was truly two motions. The first, filed the day of trial, June 21, 2001, was actually a motion for extension of time to retain an expert witness and contained no allegations regarding petitioner's mental state. The actual motion pursuant to Rule 215(a) was filed nearly two weeks after the grounds hearing, on July 2, 2001. This motion contained the barest of allegations: "upon information and belief, [p]etitioner lacks the cognitive ability to make decisions regarding a dissolution *** and is unable to testify with any reliability."

A party moving for a physical or mental examination of an adverse party bears the initial burden of establishing good cause for the examination. *Thompson v. Palos Community Hospital*, 254 Ill. App. 3d 836, 840, 627 N.E.2d 239, 242-43 (1993). Here, the only allegations that might have amounted to good cause under Rule 215(a) were presented to the trial court *after* the court had received two depositions of the petitioner, one of which had been videotaped. The function of the trier of fact is to determine credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. *People v. Bull*, 185 Ill. 2d 179, 204, 705 N.E.2d 824, 837 (1998). Since the trial court had already judged the petitioner's credibility through the two depositions, we cannot say its refusal to order the independent physical or mental examination was an abuse of discretion. The trial court could well have found no good cause for the examination had been shown.

On appeal, respondent has persisted, arguing during the evidence depositions that petitioner "exhibited substantial confusion and frailty," and the "host of drugs" petitioner was taking limited her cognitive ability. Yet these allegations by respondent stand unsupported by any other evidence in the record. No evidence was presented that any of the drugs administered to petitioner had an adverse effect on her clarity of thought. In fact, petitioner submitted the affidavit of the doctor who prescribed the medications, wherein he indicated petitioner was alert, oriented, and capable of making decisions. This affidavit was further supported by the affidavit of a nurse responsible for petitioner's primary care. Given these facts, we are not inclined to reverse the trial court's decision on respondent's bare allegation that

petitioner appeared confused. See *Thompson*, 254 Ill. App. 3d at 841, 627 N.E.2d at 244.

Similarly, a court may refuse a motion made under Supreme Court Rule 215(a) if it is not made "within a reasonable time before the trial." 134 Ill. 2d R. 215(a). Here, respondent's motions for the independent physical or mental examination were made on June 21 and July 2, 2001. Yet respondent had raised the issue of petitioner's competence from the outset of the case, arguing in a motion to dismiss filed on April 17, 2001, petitioner was not capable of making decisions on her legal status. If respondent desired the independent examination, the motion should have been pursued from the outset. The trial court could properly have disallowed the motions, especially in light of the accelerated nature of the proceedings. In sum, the denial of the motions pursuant to Supreme Court Rule 215(a) was not an abuse of discretion.

## B. The Trial Court Did Not Err in Finding Mental Cruelty as Grounds for the Dissolution

■ Respondent next contends the trial court erred in finding respondent's mental cruelty as grounds for the dissolution. The trial court's decision on whether extreme mental cruelty has been proved will not be overturned unless it is against the manifest weight of the evidence. *In re Marriage of Reeder*, 212 Ill. App. 3d 56, 58, 570 N.E.2d 876, 878 (1991). In determining whether the acts complained of amount to mental cruelty, the facts of the particular case must be considered in light of the parties' patterns of conduct, their respective emotional makeup, and the circumstances around which the complaint of conduct occurred. *In re Marriage of Wade*, 158 Ill. App. 3d 255, 265, 511 N.E.2d 156, 163 (1987). However, the trial court is to primarily consider the effect on the complaining party. *West v. West*, 77 Ill. App. 3d 828, 830-31, 396 N.E.2d 1382, 1384-85 (1979). In short, the court's function is not to determine whether the respondent's conduct would have been cruel to a reasonable person or a person of average sensibilities but to determine whether the respondent's conduct was, in fact, cruel to the petitioner. See *Reeder*, 212 Ill. App. 3d at 59, 570 N.E.2d at 878; *Akin v. Akin*, 125 Ill. App. 2d 159, 166, 260 N.E.2d 481, 484 (1970).

The crux of petitioner's allegations was respondent treated her badly. At both depositions, petitioner maintained her allegation respondent had treated her poorly, mocking petitioner in front of others, shouting obscenities at her, and telling her he wished she was dead. These allegations were corroborated by several additional witnesses who were able to provide additional examples of respondent's mistreat-

ment of petitioner. Finally, petitioner alleged respondent had purposefully given her the wrong amount of medication. According to petitioner, all such behavior by respondent had a detrimental impact on her emotional and mental well-being. Respondent countered all allegations by denying petitioner's version of events and tendering the testimony of a single witness who did little more than reiterate those denials.

While petitioner's allegations might not qualify as mental cruelty in other situations, the trial court viewed them, as it should have, in light of petitioner's terminally ill status. The trial court was entitled to conclude subjecting an elderly, terminally ill woman to any form of hardship, as here, qualified as mental cruelty. Our courts have long held a wide variety of nonphysical acts and verbal abuse may constitute mental cruelty. See, *e.g.*, *Morris v. Morris*, 70 Ill. App. 3d 125, 127-28, 388 N.E.2d 129, 131 (1979) (husband's verbal abuse of ill wife just after surgery constituted mental cruelty); *In re Marriage of Borg*, 96 Ill. App. 3d 282, 286, 421 N.E.2d 214, 1217 (1981) (wife's verbal abuse of husband while recuperating from heart attack constituted mental cruelty). Here, even the slightest verbal abuse of petitioner by respondent was exacerbated by petitioner's failing health.

Here, the trial court concluded the preponderance of the evidence favored a finding of mental cruelty. We do not disagree or find its decision to be against the manifest weight of the evidence. Clearly, by finding respondent guilty of mental cruelty, the court found petitioner's testimony more credible. The court was in a much better position to make such a determination than this court. See *Wade*, 158 Ill. App. 3d at 265-66, 511 N.E.2d at 163-64. Absent any clear evidence to the contrary, we will not overturn such a finding.

Respondent has suggested petitioner's statements are inherently unreliable, owing to petitioner's declining health and medications. We are not persuaded. While petitioner may have misstated names or dates in the course of her two depositions, she never wavered in her allegations of respondent's cruelty. This struck the trial court as reliable and credible evidence, and we do not disagree. For these reasons, we affirm the trial court's decision with respect to grounds.

### C. The Trial Court Did Not Err by Entering a Bifurcated Judgment

■ Finally, respondent contends the trial court erred by entering the judgment of dissolution while reserving the other issues. Such bifurcated judgments are controlled by section 410(b) of the Dissolution Act, which provides:

"Judgment shall not be entered unless, to the extent it has juris-

diction to do so, the court has considered, approved, reserved[,] or made provision for *** the maintenance of either spouse and the disposition of property. The court may enter a judgment for dissolution that reserves any of these issues either upon (i) agreement of the parties, or (ii) motion of either party and a finding by the court that appropriate circumstances exist." 750 ILCS 5/401(b) (West 2000).

The decision to enter a bifurcated judgment is entitled to considerable deference and will not be disturbed on appeal absent an abuse of discretion. See, *e.g.*, *In re Marriage of Kenik*, 181 Ill. App. 3d 266, 278, 536 N.E.2d 982, 989 (1989).

■ Respondent's main contention, then, is no "appropriate circumstances" here warranted the entry of a bifurcated judgment of dissolution. As with any standard as nebulous as "appropriate circumstances," no exhaustive list of facts justifying a bifurcated judgment exists. Nonetheless, our supreme court has identified the following "appropriate circumstances": (1) lack of *in personam* jurisdiction, (2) if a party would be unable to pay court-ordered child support or maintenance, (3) if the court has set aside a fund for child support, or (4) if children do not reside with either parent. *In re Marriage of Cohn*, 93 Ill. 2d 190, 199, 443 N.E.2d 541, 545 (1982). Other reasons "for bifurcation must be of the same caliber as those enumerated in *Cohn.*" *In re Marriage of Bogan*, 116 Ill. 2d 72, 80, 506 N.E.2d 1243, 1246 (1986).

In 1990, this court added to this nonexhaustive list in *In re Marriage of Blount*, 197 Ill. App. 3d 816, 555 N.E.2d 114 (1990). In *Blount*, the petitioner was an elderly, very ill wife, whose depressed mental condition was aggravated by her fear that respondent husband would obtain some of her assets on her death. Both parties had maintained largely separate assets, no children existed, and a premarital agreement governed the distribution of the parties' assets. On appeal of the entry of a bifurcated judgment of dissolution, we held a benefit to the emotional status of an elderly, very ill wife qualified as an "appropriate circumstance" for the entry of bifurcated judgment of divorce. *Blount*, 197 Ill. App. 3d at 820, 555 N.E.2d at 116-17.

■ We do not see this case as presenting a different situation. Petitioner wished to be divorced from respondent prior to her death, so she might dispose of her half of the marital assets according to her wishes. This desire was further reflected by petitioner's changed will, in which she intentionally made no provision for respondent but made numerous specific bequests of her personal property.

Respondent suggests the entry of the bifurcated judgment will promote the entanglement of the rights of third parties, in contraven-

tion of clear *dicta* in *Cohn*. Therein, our supreme court held the entry of a bifurcated judgment presents potential complications insofar as "the court could likely be required to adjudicate marital-property rights have become entangled with the supervening rights of third parties, including subsequent spouses." *Cohn*, 93 Ill. 2d at 198-99, 443 N.E.2d at 545. Further, the court in *Cohn* recognized the entry of a judgment of dissolution prior to property disposition "would complicate, rather than simplify, matters with respect to the rights of a surviving spouse in the event of an intervening death." *Cohn*, 93 Ill. 2d at 199, 443 N.E.2d at 545. According to respondent, this constitutes a clear policy of our supreme court disfavoring bifurcated judgments of dissolution in any situation.

Respondent's argument ignores several key facts of this case. First, and not insignificantly, the supreme court in *Cohn* was faced with the issues of child support and maintenance, which the trial court there had ignored by entering a bifurcated judgment. *Cohn*, 93 Ill. 2d at 193-95, 443 N.E.2d at 542-43. In the instant case, such issues were irrelevant, as petitioner was in the terminal stage of her life and young children were not involved. The impetus to avoid entering a judgment of dissolution before making a final settlement of all ancillary matters was simply not as strong in this case as it was in *Cohn*.

Second, respondent's rights at this stage of the dissolution proceedings remain relatively unaffected. Our only task at this stage is to assess the propriety of the entry of the bifurcated judgment. *Kenik*, 181 Ill. App. 3d at 270, 536 N.E.2d at 984. All other issues ancillary to the dissolution claim must be disposed of by the trial court before any are susceptible to appeal. *Kenik*, 181 Ill. App. 3d at 270, 536 N.E.2d at 984, citing *In re Marriage of Leopando*, 96 Ill. 2d 114, 119, 449 N.E.2d 137, 140 (1983). As the finder of fact, the trial court was in the best position to determine the effect of the bifurcation on the entanglement of the rights of third parties, and we will not upset the trial court's considerable discretion to bifurcate.

Moreover, we are persuaded, on policy grounds, our previous decision in *Blount* is still correct. In the intervening 11 years since we decided *Blount*, numerous other jurisdictions have addressed the issue of whether the impending death of a party is an "appropriate circumstance" for the entry of a bifurcated judgment of dissolution. All have held much as we have. *Barnett v. Barnett*, 743 So. 2d 105, 108 (Fla. App. 1999), *aff'd*, 768 So. 2d 441 (Fla. 2000) ("[t]he impending death or terminal illness of a party is the type of exceptional circumstance *** which can justify bifurcation of a dissolution proceeding"); *Estate of Burford v. Burford*, 935 P.2d 943, 945 (Colo. 1997) (exceptional circumstances warranting bifurcation existed when the

husband was in poor health and would probably die before a permanent orders hearing was conducted); *Estate of Pinkerton v. Pinkerton*, 435 Pa. Super. 455, 458, 646 A.2d 1184, 1185 (1994) (trial court did not err in entering bifurcated judgment where all parties and the court were aware wife was dying).

We are particularly persuaded of the appropriateness of the bifurcated judgment of dissolution by the Dissolution Act itself. Under the statute providing for a bifurcation of divorce proceedings, the death of a party does not abate the action. 750 ILCS 5/401(b) (West 2000). While this statute does not give a spouse's estate the right to pursue a divorce action, it does provide where a judgment of dissolution has been entered prior to death, the action will not instantly become a probate matter. See *In re Marriage of Davies*, 95 Ill. 2d 474, 479-80, 448 N.E.2d 882, 884-85 (1983). Clearly, our legislature contemplated just the situation presented in the instant case, and it intended the desire of a party seeking a divorce not be frustrated by the simple fact of the party's death after the entry of the judgment of dissolution.

Yet, we are aware of the implications of our decision. To hold as we do today encourages spouses in the end stages of life to seek a dissolution of marriage in the hopes of increasing the amount of their estate for their heirs. But to hold otherwise encourages the surviving spouse to delay the divorce proceedings as long as possible to avoid the termination of their rights as surviving spouse.

Thus, we limit our decision today to the facts of the case at bar, and we offer no opinion as to the propriety of a bifurcated judgment of dissolution in anticipation of the death of a party in all circumstances. As we have noted, the decision to bifurcate a judgment of dissolution of marriage rests within the sound discretion of the trial court, and we do not intend to provide any guidelines for a trial court in making its decision. Similarly, we acknowledge the continued validity of our supreme court's decision in *Cohn* and its suggested limits on the entry of a bifurcated judgment.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER and STEIGMANN, JJ., concur.