# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Tomlins*, 2013 IL App (3d) 120099

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MARGARET TOMLINS, Petitioner-Appellee, and CHRISTOPHER GLENN, Respondent-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0099 |
| Filed<br>Rehearing denied | January 14, 2013<br>February 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly entered a bifurcated judgment of dissolution based on the effect the parties' protracted and contentious litigation was having on their children, and petitioner established grounds of irreconcilable differences that justified the dissolution of the marriage. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 08-D-645; the Hon. David J. Dubicki and the Hon. Michael Risinger, Judges, presiding. |
| Judgment | Affirmed. |

Counsel on          Christopher J. Glenn, of Peoria, *pro se*.
Appeal

                    Margaret A. Tomlins, of Peoria, *pro se*.


Panel               JUSTICE CARTER delivered the judgment of the court, with opinion.
                    Justices McDade and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1     The petitioner, Margaret Tomlins, filed a petition for dissolution of her marriage to the respondent, Christopher Glenn. After a hearing on grounds for dissolution, the circuit court entered a bifurcated judgment, which dissolved the marriage and reserved other issues for future resolution. On appeal, Christopher argues, *inter alia*, that the court erred when it found that grounds existed to justify the dissolution of his marriage to Margaret and when it entered the bifurcated judgment. We affirm.

¶ 2                                    FACTS

¶ 3     On October 29, 2008, Margaret filed a petition for dissolution of her marriage to Christopher. In the petition, Margaret alleged that the parties were married on May 10, 2000; that they had two children together, John (Jack), born December 2, 2000, and Nicholas, born December 21, 2003; and that Christopher subjected Margaret to "extreme and repeated mental cruelty without cause or provocation" such that dissolution was proper.[1] After considerable pretrial litigation, on December 10, 2010, Margaret filed a motion for leave to file an amended petition for dissolution, which sought to add an allegation that the marriage should be dissolved on the grounds of irreconcilable differences. The circuit court granted that motion on March 24, 2011.

¶ 4     On April 14, 2011, the circuit court held a hearing on whether grounds existed to dissolve the marriage. Margaret was the sole witness at the hearing and testified to the parties' long history of marital problems. She testified that she and Christopher first separated in early 2002 when they were living in Minnesota. Due to their marital problems, she obtained an apartment where she stayed at times until summer 2002. She was in individual counseling at the time, and she and Christopher attended approximately five or six marital counseling sessions together. In summer 2002, she moved back in with Christopher.

---

[1]Among other things, Margaret also sought custody of the parties' two minor children. The circuit court's resolution of the custody issue was appealed separately by Christopher and is the subject of a separate appeal, No. 3-12-0237.

¶ 5    Margaret testified that she and Christopher continued to have problems after she moved back in with him. They constantly argued over their living conditions and arrangements, and Christopher did not like that Jack was in day care after Margaret lost her job in October 2002 and decided to pursue a medical doctorate. She believed her lack of income was causing stress for their relationship, and stated that Christopher had suggested that her value to the family was diminished at that time.

¶ 6    In September 2003, Margaret moved to Bloomington with Jack to live with her mother and her mother's husband. Margaret moved back in with Christopher in Minnesota in November 2003, where she stayed through September 2005. In October 2005, she and Christopher bought a house for her in Peoria, and she moved there with Jack and Nicholas in December 2005.

¶ 7    In 2006 and 2007, Christopher visited Margaret and their children infrequently in Peoria. In 2006, Christopher left his job with Sprint and started his own company; he spent approximately nine months on the road for work during 2007. Later in 2007, he took a job with Sprint in Chicago so he could visit Margaret and their children in Peoria on weekends. After several months of this arrangement, he transitioned his job to the Peoria area.

¶ 8    In summer 2008, Margaret decided to pursue a divorce. She claimed that she and Christopher continued fighting and did so in front of the children.

¶ 9    Margaret not only testified about the verbal altercations that she had with Christopher over the years, but also about physical confrontations. She stated that Christopher was physically violent toward her on "too numerous occasions to count." Margaret mentioned episodes in Minnesota in which Christopher threw an ironing board at her; kicked a bathroom door open to get to her; and grabbed her in the neck area, thereby pulling the seams out of her shirts. She also mentioned episodes that occurred in Illinois; in particular, she described a 2007 incident in which 3½-year-old Nicholas saw Christopher force Margaret's head to the bathroom floor after forcing open the door to get to her.

¶ 10    Margaret also testified that she and Christopher had not had sex since October 2008 and had been sleeping in separate beds.

¶ 11    Margaret testified that an incident in April 2009 convinced her that reconciliation was impossible. Jack told Margaret one morning that Christopher hit him in the face the previous night. Margaret testified that Jack's eye was purple, and that he had marks on his neck, on his cheek, and on the top of his head. Christopher admitted to Margaret that he had hit Jack. Around April 28, 2009, Christopher left the house permanently.

¶ 12    During closing arguments, Margaret's attorney requested that the circuit court enter a bifurcated judgment dissolving the parties' marriage.

¶ 13    At the close of the hearing, the circuit court found that "[i]t is abundantly clear from the evidence that this marriage is irretrievably broken, that there are indeed irreconcilable differences." The court noted:

"I do find that in the spring of 2002 this–these parties were separated for a period of six months or thereabout. I find that in the fall of 2003 these parties were separated and apart for three months, and I find that beginning in December of 2005 for a period of time which is not really clear to this Court as to how long, but there was the testimony

-3-

as to the Peoria house and the Minnesota house.

"Clearly this couple got back together at some point, in other words attempted reconciliation, and if that was going to ultimately lead to a healing of the marriage it ended again with a couple of events around November of 2009 with the husband checking himself into the psych ward."

Accordingly, the court found that Margaret had proven that grounds existed to dissolve the marriage.

¶ 14     Over Christopher's objection, the circuit court entered a bifurcated judgment of dissolution. Specifically, the court found that entering such a judgment was in the best interests of the parties and their children.

¶ 15     After further litigation, including several pleadings filed by Christopher related to the bifurcated judgment, at a hearing on January 24, 2012, the circuit court stated that it failed to grant Christopher a chance to be heard on the April 14, 2011, motion to bifurcate. After hearing arguments, the court again found that bifurcation was proper and specifically found that "there is no just reason for delay for either enforcement or appeal or both of the bifurcation and entering Judgment of Dissolution of Marriage, as I did in April of last year."

¶ 16     Christopher appealed.

¶ 17                                        ANALYSIS

¶ 18     Initially, we note that Margaret has not filed an appellee's brief with this court. However, because the record is simple and because we can easily rule on Christopher's allegations of error without the aid of an appellee's brief, we will consider the appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 19     Despite the fact that the circuit court's ruling was adverse to Christopher, he has raised at the outset an issue of whether this court has jurisdiction to hear this appeal. Christopher argues that the circuit court erred when it found pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason to delay either enforcement of, or appeal from, the circuit court's judgment, or both.

¶ 20     In *In re Marriage of Bogan*, 116 Ill. 2d 72 (1986), our supreme court addressed, in part, whether a litigant could challenge the entry of a bifurcated judgment of dissolution of marriage on appeal, even though the appellant did not challenge the circuit court's finding that grounds existed to dissolve the marriage. In addressing this question, our supreme court noted a previous decision in which it held:

"[A] petition for dissolution advances a single claim for an order dissolving the parties' marriage, and that the numerous other issues, such as custody, property division and support, are merely ancillary to the cause of action. Therefore, since they are not separate claims, in order to avoid piecemeal appeals arising out of the same litigation, we concluded that Rule 304(a) (87 Ill. 2d R. 304(a)) does not authorize appeal from judgments on the separate issues." *Bogan*, 116 Ill. 2d at 75 (citing *In re Marriage of Leopando*, 96 Ill. 2d 114, 119 (1983)).

However, the *Bogan* court held that *Leopando* did not foreclose a litigant's ability to appeal

a bifurcated judgment of dissolution:

> "Allowing a litigant to appeal the bifurcation of a judgment, where timely objection was made before the trial court, does not encourage piecemeal appeals involving the dissolution itself or the ancillary issues. Furthermore, if we refuse to allow a litigant to appeal the propriety of a bifurcated judgment until all of the ancillary issues have been resolved, the issue would be moot and appeal on that issue would therefore be foreclosed." *Bogan*, 116 Ill. 2d at 76.

¶ 21 We acknowledge several cases have construed *Bogan* to stand for the proposition that a bifurcated judgment of dissolution can be appealed when the circuit court makes a finding pursuant to Rule 304(a) that no just reason exists to delay enforcement or appeal or both. *In re Marriage of Link*, 362 Ill. App. 3d 191, 193 (2d Dist. 2005); *In re Marriage of Mardjetko*, 369 Ill. App. 3d 934, 936 (2d Dist. 2007); *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 70. However, we disagree with this interpretation of *Bogan*. The *Bogan* decision never stated that a Rule 304(a) finding was made in that case, nor did it state that a Rule 304(a) finding was needed to appeal a bifurcated judgment of dissolution. We believe the proper interpretation of *Bogan* is that the decision to enter a bifurcated judgment of dissolution constitutes a final and appealable judgment under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). See *Bogan*, 116 Ill. 2d at 75-76; accord *In re Marriage of Awan*, 388 Ill. App. 3d 204, 210 (3d Dist. 2009) (holding that "a dissolution judgment in bifurcated proceedings is valid and that the reservation of issues does not render the judgment of dissolution nonfinal"); *In re Marriage of Wade*, 408 Ill. App. 3d 775, 781 (1st Dist. 2011) (stating that "[b]y granting a bifurcated judgment of dissolution, the court at least resolved one issue present in the proceedings and provided the parties and their children with certainty and finality regarding the parties' marital status"); *Copeland v. McLean*, 327 Ill. App. 3d 855 (4th Dist. 2002) (allowing an appeal from a bifurcated judgment of dissolution without any mention of Rule 304(a)); *In re Marriage of Blount*, 197 Ill. App. 3d 816 (4th Dist. 1990) (same). Given that the decision to enter a bifurcated judgment of dissolution is a final and appealable order under Rule 301, whether the court in this case even made a Rule 304(a) finding is irrelevant. Accordingly, we hold that we have jurisdiction to hear the appeal under Rule 301.

¶ 22 Turning to the merits, Christopher posits numerous arguments on appeal, including that the court erred when it found that grounds existed to justify the dissolution of his marriage to Margaret and when it entered the bifurcated judgment. We will address these arguments in turn.

¶ 23 First, Christopher argues that the circuit court erred when it found that grounds existed to justify the dissolution of his marriage to Margaret. Primarily, Christopher argues that Margaret failed to prove that the parties lived "separate and apart" as required by section 401(a)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/401(a)(2) (West 2010)).

¶ 24 One ground upon which a dissolution of marriage may be granted is "[t]hat the spouses have lived separate and apart for a continuous period in excess of 2 years and irreconcilable differences have caused the irretrievable breakdown of the marriage and the court determines

that efforts at reconciliation would be impracticable and not in the best interests of the family." 750 ILCS 5/401(a)(2) (West 2010). Parties can be said to be living "separate and apart" even if they reside in the same house. *In re Marriage of Kenik*, 181 Ill. App. 3d 266, 273-74 (1989); *In re Marriage of Dowd*, 214 Ill. App. 3d 156, 159 (1991). Relevant considerations to whether the parties were living separate lives include whether the parties had ceased marital relations and the type of communication, or lack thereof, between the parties. *Kenik*, 181 Ill. App. 3d at 273.

¶ 25   In this case, Margaret testified at the April 14, 2011, hearing that Christopher moved out permanently around April 28, 2009. She also testified that prior to that move, the parties had not had sex since October 2008 and had been sleeping in separate beds. Christopher neither impeached Margaret on these statements nor offered any evidence to the contrary at the hearing. Under these circumstances, we hold that Margaret did in fact prove that the parties had been living separate and apart as required by the Act. Accordingly, we hold that the circuit court did not err when it found that grounds existed in the form of irreconcilable differences to justify the dissolution of the parties' marriage.

¶ 26   Second, Christopher argues that the circuit court erred when it bifurcated the proceedings. Christopher disagrees with the court's ruling that appropriate circumstances existed to grant the motion to bifurcate.

¶ 27   Section 401(b) of the Act grants the circuit court the authority to enter bifurcated judgments in divorce cases:

> "Judgment [of dissolution of marriage] shall not be entered unless, to the extent it has jurisdiction to do so, the court has considered, approved, reserved or made provision for child custody, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property. The court may enter a judgment for dissolution that reserves any of these issues either upon (i) agreement of the parties, or (ii) motion of either party and a finding by the court that appropriate circumstances exist." 750 ILCS 5/401(b) (West 2010).

The decision to enter a bifurcated judgment is a matter within the circuit court's discretion and we will not disturb that decision absent an abuse of that discretion. *Copeland*, 327 Ill. App. 3d at 865.

¶ 28   "Appropriate circumstances" is a nebulous concept. *Copeland*, 327 Ill. App. 3d at 865. Our supreme court has stated that reasons for bifurcation can exist if they are of a caliber similar to a lack of jurisdiction over the respondent, lack of an ability to pay support, or concerns for children. See *Bogan*, 116 Ill. 2d at 80. In *Wade*, the First District determined that one such reason was when the bifurcation was "necessary to protect and promote the emotional and mental well-being of the parties' children." *Wade*, 408 Ill. App. 3d at 780. While our supreme court has emphasized that the interests of finality and avoiding piecemeal litigation will often weigh against entering a judgment of dissolution prior to the resolution of all ancillary issues to a divorce proceeding, it has also recognized that "there are certainly cases where the personal circumstances of the parties necessitate bifurcated proceedings." *In re Marriage of Mathis*, 2012 IL 113496, ¶ 31.

¶ 29   In this case, the circuit court found that the entry of a bifurcated judgment of dissolution

was justified in part because of the effect the marital issues were having on the parties' children. Margaret testified that the marital issues she and Christopher were having occurred in front of the children, including an episode in which Christopher forced Margaret's head to the bathroom floor. Margaret also testified that she decided against any further attempts at reconciling the marriage after the April 2009 incident in which Christopher struck Jack. Under these circumstances, we agree with the circuit court that appropriate circumstances existed to bifurcate the proceedings. See *Wade*, 408 Ill. App. 3d at 780. Thus, we hold that the court's decision to enter a bifurcated judgment in this protracted and contentious litigation was not an abuse of discretion.

¶ 30 Christopher also argues that the circuit court violated his due process rights by failing to hold an evidentiary hearing on the motion to bifurcate and that the court should have appointed a guardian *ad litem* before it bifurcated the proceedings. However, Christopher has not cited any authority that stands for the propositions upon which his arguments rest. Therefore, following the section 401(b) statutory authority, we reject these arguments as meritless. See 750 ILCS 5/401(b) (West 2010).

¶ 31 We acknowledge that Christopher has attempted to raise numerous other issues on appeal. However, because an appeal from the entry of a bifurcated judgment allows a reviewing court to address only the judgment of dissolution of the marriage and the bifurcation itself (see *Bogan*, 116 Ill. 2d at 76), we therefore lack appellate jurisdiction to consider Christopher's remaining arguments.

¶ 32          CONCLUSION

¶ 33 The judgment of the circuit court of Peoria County entering the bifurcated judgment of dissolution is affirmed.

¶ 34 Affirmed.